# EXHIBIT A

# PARTNERSHIP AGREEMENT

Working copy reflecting amendments
through January 31, 2002

Finch & Lynde ............................... 1842 to 1844
Hubbell, Finch & Lynde ................... 1844 to 1845
Finch & Lynde ............................... 1845 to 1857
Finches, Lynde & Miller................... 1857 to 1890
Miller, Noyes & Miller .................... 1890 to 1895
Miller, Noyes, Miller & Wahl............ 1895 to 1900
Miller, Noyes & Miller .................... 1900 to 1906
Miller, Mack & Fairchild.................. 1906 to 1951
Fairchild, Foley & Sammond ............. 1951 to 1960
Foley, Sammond & Lardner............... 1960 to 1969
Foley & Lardner ............................. 1969 to

# TABLE OF CONTENTS

1.  MANAGEMENT. ....................................................................................... 2
    A.  Management Committee and Chairman.......................................... 2
    B.  Members of and Vacancies on Committee ..................................... 2
    C.  Quorum of Committee ..................................................................... 2
    D.  Powers of Committee ...................................................................... 3
    E.  Meetings of Committee .................................................................. 4
    F.  Less Than Minimum Number ......................................................... 4

2.  RESPONSIBILITIES OF PARTNERS. ................................................. 4
    A.  Entire Working Time and Attention .............................................. 4
    B.  Confidentiality ................................................................................ 4

3.  PROPERTY OF PARTNERSHIP. .......................................................... 4

4.  PARTICIPATIONS IN EARNINGS. ...................................................... 5
    A.  Drawing Accounts and Interim Distributions ................................ 5
    B.  Final Distributions ......................................................................... 5

5.  RETIREMENT AND WITHDRAWAL. .................................................. 5
    A.  Definitions....................................................................................... 5
    B.  Election to Retire or Withdraw....................................................... 8
    C.  Retirement or Withdrawal by Committee Action ........................... 8
    D.  Change in Status of Retired Partner .............................................. 8
    E.  Retired Partner's Participation in Earnings ................................... 8
    F.  Phased Reduction in Participations. ............................................. 13
    G.  Continued Participation of Surviving Spouses. ........................... 15
    H.  Payments on Death ....................................................................... 17
    I.  Adjustments in Retirement Participations and Death Benefits ..... 19
    J.  Participation of Withdrawing Partner ........................................... 23
    K.  Phase-In of Retirement and Death Benefits of Lateral Entry Partners ................... 23
    L.  Fiduciary Fees and Professional Services. ................................... 23
    M.  Discretion of Committee................................................................ 25

6.  TIME OF PAYMENTS.......................................................................... 25
    A.  Retired and Consulting Partners and Surviving Spouses ............. 25
    B.  Withdrawing Partners .................................................................... 25

7.  PARTNERS EMERITUS.................................................................... 26

8.  LOANS FROM PARTNERS ................................................................ 26

9.  TERMINATION OF PARTNER. .......................................................... 26
    A.  No Termination of Partnership ..................................................... 26
    B.  Reconstitution of Partnership ....................................................... 26
    C.  Withdrawal of Partners ................................................................. 26
    D.  Retired Partners ............................................................................ 27

10.  DIRECTORS' FEES ................................................................................. 28

11.  ACCOUNTING .................................................................................... 28
     A.    Books of Account .......................................................................... 28
     B.    Cash Basis ................................................................................... 28

12.  COMMITTEE MEMBERS ATTORNEYS-IN-FACT ................................ 28

13.  AMENDMENTS .................................................................................... 28

14.  CONTRACT PARTNERS ........................................................................ 28

15.  CAPITAL REQUIREMENTS OF ACTIVE PARTNERS ............................ 28

16.  OFFSET; ASSIGNMENT ......................................................................... 30

17.  COUNTERPARTS ................................................................................. 30

## PARTNERSHIP AGREEMENT

MEMORANDUM OF PARTNERSHIP AGREEMENT (the "Agreement") made and entered into as of the 30th day of December, 1992, between and among the Active Partners (as defined, along with other capitalized terms, in Article 5-A) of the partnership of Foley & Lardner (the "Partnership") whose names and signatures are set forth at the end hereof.

### WITNESSETH:

WHEREAS, the parties are now and have heretofore been partners and associated together in the practice of law under the partnership name of Foley & Lardner, under and pursuant to a Memorandum of Partnership Agreement dated January 3, 1989, as amended (the "Old Partnership Agreement"); and

WHEREAS, it is desired to revise and redefine the relationship of the parties among themselves and to the Partnership and not thereby to create a new partnership under revised terms and conditions; and

WHEREAS, this Agreement is entered into by members of the legal profession who, as individual lawyers, are bound by the principles and canons of ethics traditionally developed and maintained, and sometimes formulated, by the profession; and, in all relations with or within the Partnership, whether concerning or between partners and associates or either, first consideration must always be given to the maintenance and promotion of those standards; and in all acts done under or pursuant to this Agreement full consideration shall always be given to the overriding obligation of those ethical standards; and this shall at all times be borne in mind in the construction of this Agreement and in the acts done and practices observed thereunder and the effect to be given thereto;

NOW, THEREFORE, the parties agree to continue the Partnership for the practice of law under the partnership name "Foley & Lardner" as a general partnership under the provisions of Chapter 178, Wisconsin Statutes (1989-90) (as it may be amended from time to time), upon the following terms and conditions:

1.     **MANAGEMENT.**

A.     **Management Committee and Chairman.**  Management of the affairs of the Partnership shall be vested in a management committee (the "Committee"), consisting of not less than seven (7) Active Partners.   The Committee may (but shall not be required to) elect, from its membership, by the affirmative vote of not less than eighty percent (80%) of the entire Committee, a Chairman of the Committee who shall be Chief Executive of the Partnership (the "Chairman"), to serve for a term not to exceed the lesser of (i) four (4) years from the date of his or her election as Chairman, or (ii) the balance of his or her term as a member of the Committee.  The Chairman shall have such powers and authority to manage the affairs of the Partnership as may, from time to time, be delegated to him or her by a majority of the entire Committee.  The Committee shall not delegate to the Chairman the powers to (1) change the membership of, or fill vacancies on, the Committee; (2) change the name of the Partnership; (3) cause the Partnership to merge or consolidate with or into any other firm or group; (4) determine who shall become or cease to be a partner; or (5) determine the Participation in the Earnings of the Partnership or other compensation or benefits (including without limitation retirement and death benefits) of any partner.  The Chairman may be removed from office at any time, with or without cause, by an affirmative vote of a majority of the entire Committee.  Any such Chairman so elected shall be eligible for re-election so long as he or she shall be a member of the Committee.

B.     **Members of and Vacancies on Committee.**  The members of the Committee shall be those serving as such on the date of this Agreement, who are as follows:

> William J. Abraham, Jr.
> J. Gordon Arkin
> James N. Bierman
> Ralf R. Boer
> James R. Clark
> Benjamin F. Garmer, III
> Michael W. Grebe
> Bernard S. Kubale
> Maurice J. McSweeney
> Gerald J. Neal
> Thomas G. Ragatz
> Edwin P. Wiley

The Committee may fill any vacancy in the Committee, and may from time to time appoint one or more additional members of the Committee, from among the Active Partners.  The regular term of any member appointed to the Committee shall be for a period ending on the last day of the eighth Fiscal Year following the Fiscal Year in which his or her term commenced; provided, that no Active Partner shall continue to serve on the Committee after the end of the Fiscal Year of the Partnership in which such Active Partner attains age sixty-five (65), or such earlier time as he or she ceases to be an Active Partner.

C.     **Quorum of Committee.**  A quorum shall consist of a majority of the Committee (including members participating by telephone), except that in the event a meeting of the Committee is necessary to consider an urgent matter which cannot be deferred until a majority of the Committee can attend, then a quorum for a meeting held solely to consider such matter shall consist of

2

such members of the Committee as are available to attend such meeting (including members participating by telephone) (but in no event less than three (3) members of the Committee).

      **D.**    **Powers of Committee.**  The power to determine all matters affecting the Partnership shall rest solely in the Committee, acting (i) by majority vote of the members of the Committee, notwithstanding the personal interest of its members, or (ii) by the Chairman acting pursuant to authority granted to him or her by the Committee under Article 1-A.  Without hereby limiting the generality of the foregoing, the Committee shall have the power to:

(1)      determine who shall become a partner;

(2)      subject to the provisions and limitations contained in Article 5-B, C and D and elsewhere in this Agreement, direct or require that any partner (including, without limitation, any Phasedown Partner) become a Retired Partner, or cease to be a member of the Partnership, effective on such date as shall be specified, for any reason deemed sufficient to the Committee;

(3)      terminate the Partnership and determine whether all or part of the assets of the Partnership shall be vested in a reformed partnership or shall be distributed and, in case of distribution, determine the distributive share of each partner in the assets of the Partnership, including earnings, which shares need not be similar in amount; provided, however, that a decision to terminate the Partnership shall require the affirmative vote of all members of the Committee;

(4)      fix the Participation in the Earnings of the Partnership of each Active and Contract Partner and the method of payment thereof, except as otherwise provided in Article 4 below;

(5)      enter into agreements on behalf of the Partnership with any partner relating to his or her membership in the Partnership, which agreements shall be signed on behalf of the Partnership by a majority of the Committee, and which agreements (whether entered into before or after the date hereof), to the extent that they contain provisions in addition to or inconsistent with the provisions hereof, shall supersede the provisions hereof and shall govern the rights and obligations of the parties thereto; provided, that the foregoing shall not authorize the Committee to enter into an agreement with any partner (whether an Active, Contract, Consulting, Retired or Withdrawing Partner) granting such partner (or his or her Surviving Spouse, Issue or Personal Representative) Participations in the Earnings of the Partnership, retirement privileges or participations or death benefits more favorable than the terms stipulated in Article 5 of this Agreement;

(6)      appoint such additional committees with such number of partners and duties as the Committee shall determine;

(7)      determine the name of the Partnership; and

(8)      determine all matters of policy and all procedures relating to the Partnership and all rights and obligations of partners with respect to the Partnership.

**E.   Meetings of Committee.**  Meetings of the Committee may be called by any two (2) members of the Committee.

**F.   Less Than Minimum Number.**  Notwithstanding the requirement that there shall at all times be not less than seven (7) members of the Committee, if at any time there shall be less than that number, the Committee, as then constituted, may (by majority vote) appoint additional members of the Committee and, pending such appointment, may exercise all of the powers of the Committee hereunder.  It is contemplated, however, that the Committee shall act with reasonable promptness in complying with the requirement that there be not less than seven (7) members of the Committee and, in such event, shall act within a period of six (6) months.

## 2.   RESPONSIBILITIES OF PARTNERS.

**A.   Entire Working Time and Attention.**  Except as otherwise determined by the Committee, and subject to the terms of Article 5-F(1) and (5), each Active and Consulting Partner shall devote his or her entire working time and attention to the affairs of the Partnership, and each such Active and Consulting Partner shall account for and remit to the Partnership the equivalent of all remuneration received on account of his or her professional endeavors.  Accordingly, each such Active and Consulting Partner shall pay over to the Partnership all:

(1)    fees received as a fiduciary, including without limitation director's fees, personal representative's fees, trustee's fees and guardian ad litem fees, and

(2)    consulting fees, seminar fees, honoraria, teaching salaries, compensation for services as an officer, employee and/or partner of another organization, fringe benefits and all other compensation and remuneration attributable to his or her professional endeavors, whether or not given for strictly legal services,

excepting only remuneration (i) related to the personal investments of such Active or Consulting Partner, (ii) arising out of administration of the affairs of such Active or Consulting Partner's family, or (iii) as otherwise specifically agreed to by the Committee (*e.g.*, specific contractual arrangements, determined on an ad hoc basis).

**B.   Confidentiality.**  Except as required in the performance of his or her obligations to the Partnership and its clients, each partner shall preserve as confidential, and shall not use or disclose, any secret or confidential information, trade secrets or business confidences of the Partnership (including, without limitation, financial data, client lists and internal operating procedures) during the period while he or she is a partner, or at any time thereafter at which such information has not previously become generally known to the public or to other lawyers without the fault or participation of such partner; provided, however, that this sentence shall under no circumstances be construed to extend, in time or in territory, the restrictions set forth in Article 9-D hereof.

## 3.   PROPERTY OF PARTNERSHIP.

The library, office furniture and equipment, records, books of account, Partnership name, good will, leases, practice and all other property of the Partnership shall at all times be and remain the property of the Partnership.  In no event shall a Retired, Withdrawing or Deceased Partner or his or her Personal Representative have any interest in the property of the Partnership other than in the Earnings of the Partnership to the extent determined in this Agreement, nor shall any such Retired

or Deceased Partner or his or her Personal Representative have any liability on account of any debt of the Partnership incurred in connection with the acquisition of any of the property of the Partnership, and the Partnership shall indemnify such Retired or Deceased Partner against any such liability, and also against any liability on account of any leasehold obligation of the Partnership.   In case of termination of the Partnership, the Committee shall, subject to the provisions of this Agreement and particularly Article 1-D(3), determine the proportions in which the partners shall participate in the distribution of the assets of the Partnership, with full discretion to weigh and determine the contribution of each partner to the Partnership over the years in measuring the distributive share of such partner upon such termination.

### 4.   PARTICIPATIONS IN EARNINGS.

The Participations in the Earnings of the Partnership of the Active Partners for each Fiscal Year shall be as follows:

**A.   Drawing Accounts and Interim Distributions.**   Each of the Active Partners shall receive a monthly drawing account.  The amount of such drawing account of each Active Partner shall be as from time to time determined by the Committee.  In addition the Committee may provide for interim distributions to each Active Partner, at such times and in such amounts (if any) as the Committee, in its sole discretion, may determine.  If in any Fiscal Year the Earnings of the Partnership shall be less than the amount needed to cover the drawing accounts and interim distributions for such Fiscal Year, the deficit shall be allocated to the extent of such drawing accounts and interim distributions to all the Active and Contract Partners proportionately to their respective interim distributions to the extent of such interim distributions, and if such deficit shall exceed the sum of such interim distributions, the excess shall be allocated to all the Active and Contract Partners proportionately to their respective monthly drawing accounts, and each Active and Contract Partner shall repay his or her share of the deficit to the Partnership.

**B.   Final Distributions.**   Any remaining Earnings of the Partnership, after payment of the drawing accounts and interim distributions hereinabove referred to (and of the Participations in the Earnings of the Partnership of Contract Partners, Consulting Partners, Retired Partners, Withdrawing Partners, and the Surviving Spouses, Issue and Personal Representatives of Deceased Partners, as provided in Article 5) shall be divided among the Active and Contract Partners in such proportions as shall be determined by the Committee in its absolute discretion.

### 5.   RETIREMENT AND WITHDRAWAL.

It is recognized that, in the normal course, the efforts and reputation of an Active Partner may not be fully realized in the Earnings of the Partnership until his or her later years or until after such Active Partner ceases to be an Active Partner.  Consequently, subject to the provisions of Articles 7 and 9, when an Active Partner shall cease to be an Active Partner for any reason, such Active Partner or the Personal Representative of such Active Partner, and his or her Surviving Spouse and Issue, shall continue to participate in the Earnings of the Partnership in accordance with the provisions of this Article 5.

**A.   Definitions.**   The following definitions shall apply to defined terms as used in this Agreement:

(1)     *"Active Partner"* shall mean any partner (other than a Contract Partner) who devotes his or her full time and earning capacity to the affairs of the Partnership except as otherwise expressly permitted by Article 5-F(1) or by the Committee, and is not a Retired Partner, Consulting Partner or Withdrawing Partner.

(2)     *"Contract Partner"* shall mean any partner who is not a signatory to this Agreement but who is a member of the Partnership pursuant to a special contract with the Partnership providing for compensation, term of partnership and possibly other terms and conditions different from those set forth in this Agreement, as authorized and limited in Article 1-D(5).

(3)     *"Consulting Partner"* shall mean any partner who continues to be an active member of the Partnership after completion of the Phasedown.

(4)     *"Retired Partner"* shall mean any partner who ceases to be an active member of the Partnership either because of his or her election to retire or by action of the Committee as provided in Article 5-B or C.

(5)     *"Withdrawing Partner"* shall mean any partner (other than a Contract Partner) who ceases to be an active member of the Partnership by action of the Committee or otherwise at any time prior to his or her death and who does not qualify as a Retired Partner.

(6)     *"Deceased Partner"* shall mean a partner who was an Active Partner, a Retired Partner or a Consulting Partner at the time of his or her death.

(7)     *"Surviving Spouse"* shall mean the person to whom a Deceased Partner is lawfully married at the time of his or her death but shall not include a spouse who became such by virtue of a marriage to a partner after the earlier of (i) the commencement of the Phasedown for such partner, or (ii) such partner's becoming a Retired Partner.

(8)     *"Child," "Children,"* or *"Issue"* shall mean persons who have or shall have acquired the designated relationships by adoption, as well as persons of such relationship by blood.

(9)     *"Personal Representative"* shall mean the duly appointed and acting executor, executrix, administrator or other comparable representative of the estate of a Deceased Partner or other applicable person including, if appropriate, two or more such representatives acting together.

(10)    *"Lateral Entry Partner"* shall mean an Active or Contract Partner who was not serving as an associate attorney of the Partnership immediately prior to the time he or she became a member of the Partnership.

(11)    *"Phasedown Partner"* shall mean an Active or Contract Partner who has commenced, but who has not completed, the Phasedown.

(12)    *"Part-time Partner"* shall mean an Active or Contract Partner (other than a Phasedown Partner) who, with the permission of the Committee, devotes less than all of his or her

001.468981.1

working time and attention to the affairs of the Partnership, and who is designated as such by the Committee.

(13) *"Disabled"* shall mean permanently prevented by poor health, disability, or other compelling reason acceptable to the Committee from engaging in the practice of law or in other gainful occupation or employment of a reasonably commensurate nature, as determined by the Committee in its sole discretion.

(14) *"Retirement Date"* shall mean the earlier of (i) the retirement date specified in any action of the Committee pursuant to Article 5-B or C, or (ii) the retirement date specified in the written notice of election of an Active or Consulting Partner to retire pursuant to Article 5-B if such date shall be on or after the date such Active or Consulting Partner attains age sixty (60).

(15) *"Withdrawal Date"* shall mean the effective date of the withdrawal of a partner from the Partnership specified in any action of the Committee pursuant to Article 5-B, C or D.

(16) *"Fiscal Year"* shall mean the fiscal year of the Partnership, and except where otherwise expressly stated, shall include any period of less than twelve (12) months which may result from any change of this Agreement or any change of Partnership personnel.

(17) *"Earnings of the Partnership"* shall mean net cash receipts after payment of all expenses and deduction of such other charges as the Committee shall direct.

(18) *"Participation in the Earnings of the Partnership"* shall mean the sum of the amounts actually distributed (including all drawing account payments, interim distributions and final distributions) or deemed distributed as a capital contribution pursuant to Article 15, to or on behalf of any partner or other person entitled to payments under this Article 5 for a Fiscal Year, which is not necessarily identical to the amount required to be reported by such partner or other person for income tax purposes and does not include any allocated contribution to the Foley & Lardner Defined Contribution Retirement Plan.

(19) *"Phasedown"* shall mean the three-year phased reduction in Participations in the Earnings of the Partnership provided in Article 5-F.

(20) *"Funded Pension Plan"* shall mean the Foley & Lardner Partners' Pension Plan, the Foley & Lardner Pension Plan, any other funded defined benefit pension plan established by the Partnership, and the Foley & Lardner Defined Contribution Retirement Plan, each as amended and in effect from time to time.

(21) *"Funded Pension Plan Distribution"* shall mean the amount deemed to be distributed from a Funded Pension Plan for any Fiscal Year to any Retired or Consulting Partner or to the Surviving Spouse, Issue or Personal Representative of a Deceased Partner, as determined pursuant to Article 5-I(3).

(22) *"Retirement Payment"* shall mean the amount otherwise payable pursuant to this Article 5 (after reduction pursuant to Article 5-I(2), but before deduction of any Funded Pension Plan Distribution pursuant to Article 5-I(3)) for any Fiscal Year to any Retired

7

or Consulting Partner or to the Surviving Spouse, Issue or Personal Representative of a Deceased Partner, other than

      (i)      discretionary amounts payable pursuant to Article 5-L(3), and

      (ii)      amounts payable as compensation for current services (except services as a Consulting Partner), including without limitation amounts payable as the compensation of a Retired or Deceased Partner for the year of such partner's retirement or death, as the case may be, for the portion of the year prior to such partner's retirement or death, determined pursuant to Article 5-E(1)(a) or 5-H(1)(a), as the case may be.

**B.**     **Election to Retire or Withdraw.** Except as otherwise provided herein, an Active or Consulting Partner may elect to become a Retired Partner or a Withdrawing Partner by giving the Committee reasonable notice in writing of his or her intention, including the day on which such Active or Consulting Partner proposes to retire or withdraw, whereupon the Committee, in cooperation with the Active or Consulting Partner so retiring or withdrawing, shall give prompt consideration to the matter and dispose of all questions which may arise in connection with such proposed retirement or withdrawal. An Active Partner may elect to retire before attaining age sixty (60) only if such Active Partner is Disabled.

**C.**     **Retirement or Withdrawal by Committee Action.** The Committee may, in its absolute discretion, require an Active or Consulting Partner (including, without limitation, any Phasedown Partner) to cease being an Active or Consulting Partner and may, in its absolute discretion, designate such Active or Consulting Partner as a Retired or Withdrawing Partner; provided, that no Active or Consulting Partner shall be denied designation as a Retired Partner after such Active or Consulting Partner attains age sixty (60).

**D.**     **Change in Status of Retired Partner.** So long as any Retired Partner shall be under age sixty (60), the Committee may, in its absolute discretion, at any time determine that the reason or cause for retirement of such Retired Partner no longer is sufficient to require such Retired Partner to remain in retirement. In such event, the rights and status of such Retired Partner shall be determined by the Committee, in its absolute discretion, including, without limitation by reason of the matters specified, reclassification of such Retired Partner (i) as an Active Partner under this or any successor general partnership Agreement, (ii) as a Contract Partner under a special contract with such partner, the terms of which shall be determined by the Committee pursuant to the terms of Article 1-(D)(5) and subject to the terms of this Article 5, or (iii) as a Withdrawing Partner.

**E.**     **Retired Partner's Participation in Earnings.** If any Active Partner shall become a Retired Partner, such Retired Partner shall thereafter continue to participate in the Earnings of the Partnership as follows:

    (1)    <u>Fiscal Year of Retirement</u>. For the Fiscal Year in which such Retired Partner ceases to be an Active Partner, subject to the provisions of Article 4-A, his or her Participation in the Earnings of the Partnership shall be the sum of:

        (a)    all drawing account payments and interim distributions made to such Retired Partner during such Fiscal Year prior to his or her Retirement Date, plus such

001.468981.1

additional amount, if any, as the Committee, in its sole discretion, shall determine pursuant to its authority under Article 1-D(4) and Article 4; provided, that the total amount payable pursuant to this Article 5-E(1)(a) shall not exceed the total amount of such Retired Partner's Participation in the Earnings of the Partnership for the preceding Fiscal Year, multiplied by a fraction consisting of one-twelfth (1/12) for each calendar month of the Fiscal Year of retirement (including the month in which retirement occurred if, but only if, retirement occurred on or after the 10th day of such month) elapsed at the Retirement Date; provided, further, that such limitation to a *pro rata* portion of such Retired Partner's Participation in the Earnings of the Partnership for the preceding Fiscal Year shall not apply if such Retired Partner shall have retired on or after the tenth day of the last month of the Fiscal Year in which such retirement occurred; provided, further, that if such retirement shall have occurred in or after the Fiscal Year in which such Retired Partner commenced the Phasedown, the amount multiplied by such fraction shall not exceed the maximum amount to which such Retired Partner would have been entitled from the Earnings of the Partnership for the Fiscal Year of his or her retirement under the provisions of Article 5-F if he or she had not so retired; and

      (b)    an amount equal to his or her Participation in the Earnings of the Partnership for the Fiscal Year following the year of retirement (determined as hereinafter provided) multiplied by a fraction consisting of one-twelfth (1/12) for each of the number of calendar months of the Fiscal Year of retirement (excluding the month in which retirement occurred if, but only if, retirement occurred on or after the 10th day of such month) remaining at the Retirement Date.

(2)    <u>Years Following Retirement</u>.  Subject to the provisions of Article 5-G(2) (permitting a Retired or Consulting Partner to elect to receive a joint and survivor annuity), a Retired Partner's Participation in the Earnings of the Partnership for each Fiscal Year after the Fiscal Year of his or her retirement until the Fiscal Year of his or her death shall be determined as follows:

      (a)    <u>To and Including Age Eighty (80)</u>.  For each Fiscal Year to and including the Fiscal Year in which such Retired Partner attains age eighty (80), his or her Participation in the Earnings of the Partnership shall be an amount equal to the sum of the following:

            (i)    forty percent (40%) of that portion of such Retired Partner's Retirement Base which does not exceed One Hundred Fifty Thousand Dollars ($150,000); plus

            (ii)    thirty percent (30%) of the amount, if any, by which such Retired Partner's Retirement Base exceeds One Hundred Fifty Thousand Dollars ($150,000) but does not exceed One Million Dollars ($1,000,000); plus

            (iii)    twenty percent (20%) of the amount, if any, by which such Retired Partner's Retirement Base exceeds One Million Dollars ($1,000,000) but does not exceed One Million Five Hundred Thousand Dollars ($1,500,000); plus

(iv)    ten percent (10%) of the amount, if any, by which such Retired Partner's Retirement Base exceeds One Million Five Hundred Thousand Dollars ($1,500,000).

(b)    Following Age Eighty (80).  For each Fiscal Year following the Fiscal Year in which such Retired Partner attains age eighty (80), and until the Fiscal Year of his or her death, his or her Participation in the Earnings of the Partnership shall be an amount equal to the sum of the following:

(i)    twenty-four percent (24%) of that portion of such Retired Partner's Retirement Base which does not exceed One Hundred Fifty Thousand Dollars ($150,000); plus

(ii)    eighteen percent (18%) of the amount, if any, by which such Retired Partner's Retirement Base exceeds One Hundred Fifty Thousand Dollars ($150,000) but does not exceed One Million Dollars ($1,000,000); plus

(iii)    twelve percent (12%) of the amount, if any, by which such Retired Partner's Retirement Base exceeds One Million Dollars ($1,000,000) but does not exceed One Million Five Hundred Thousand Dollars ($1,500,000); plus

(iv)    six percent (6%) of the amount, if any, by which such Retired Partner's Retirement Base exceeds One Million Five Hundred Thousand Dollars ($1,500,000).

(c)    Retirement Base.  For purposes of the foregoing computations, the "Retirement Base" of a Retired Partner shall be the amount equal to the average of his or her three (3) highest annual Participations in the Earnings of the Partnership prior to (i) the Fiscal Year of such Retired Partner's retirement, or (ii) the Fiscal Year in which he or she commences the Phasedown, whichever shall first occur; provided, that for purposes of the foregoing provision (i) of this Article 5-E(2)(c), any Retired Partner who shall have retired on or after the tenth day of the last month of any Fiscal Year shall be deemed to have retired on the first day of the following Fiscal Year, so that the Fiscal Year of his or her retirement may be included in his or her Retirement Base if it is one of the three (3) highest; provided, further, that for purposes of computing such average, the amount taken into account for any Fiscal Year ending after January 31, 1992 which is among the three Fiscal Years with the highest annual Participations in the Earnings of the Partnership shall not exceed one hundred twenty percent (120%) of the annual Participation in the Earnings of the Partnership for the Fiscal Year (or Years) among such three Fiscal Years with the third highest annual Participation in the Earnings of the Partnership; provided, further, that in the case of a Retired Partner who has been an Active Partner for at least one (1) but less than three (3) full Fiscal Years, the Retirement Base shall be the average Participation in the Earnings of the Partnership for the full Fiscal Years during which he or she was an Active Partner; and provided further, that in the case of a Retired Partner who has been an Active Partner for less than one (1) full Fiscal Year, such Retired Partner's Retirement Base shall be equal to the greater of (i) the minimum amount to which such Retired Partner would

10

have been entitled, on an annualized basis, in the Fiscal Year of his or her retirement had he or she continued as an Active Partner through the end of such Fiscal Year, under any contract with the Partnership, or (ii) the amount determined by computing the average Participation in the Earnings of the Partnership for the Fiscal Year preceding the Fiscal Year in which the retirement of such Retired Partner occurred, of the five (5) Active Partners whose Participations in the Earnings of the Partnership for such Fiscal Year were the lowest of any group of five (5) Active Partners who have been associated with the Partnership continuously (except for periods not exceeding one (1) year in the aggregate) since their admission to the bar and who devoted their full time and earning capacity to the affairs of the Partnership during such Fiscal Year.

      (d)    <u>Length of Service</u>.

           (i)    <u>Former Associates</u>.  With respect to any Retired Partner who shall have become an Active Partner after December 30, 1992, immediately following service with the Partnership as an associate attorney, the amounts payable pursuant to Article 5-E(2)(a) and (b) shall apply only if such Retired Partner has a total of thirty (30) years of service with the Partnership (including service as an associate attorney and/or as a Contract Partner and periods of leaves of absence authorized by the Committee, but not including service in any non-attorney position nor periods of termination between periods of active service) at the earlier of (i) such Retired Partner's Retirement Date, or (ii) the last day of the Fiscal Year in which such Retired Partner attains age sixty-five (65).  For any such Retired Partner who has less than ten (10) years of service by such date no retirement benefit shall be payable to such Retired Partner, and for any such partner who has at least ten (10) years but less than thirty (30) years of service by such date, the amount payable to such Retired Partner (as reduced and limited by Article 5-E(4), if applicable) shall be further reduced by three and one-third percent (3 1/3%) for each year or partial year by which such Retired Partner's years of service with the Partnership are less than thirty (30).

           (ii)    <u>Lateral Entry Partners</u>.  In its sole discretion, the Committee may also, but need not, provide for such service requirement (or any longer or shorter service requirement) and corresponding reduction of benefits, in any agreement with any Lateral Entry Partner who shall have become an Active Partner after December 30, 1992.

  (3)    <u>Year of Death</u>.  The Participation in the Earnings of the Partnership of a Retired Partner for the Fiscal Year in which the death of such Retired Partner occurs shall be the sum of (a) the amount, if any, to which such Retired Partner is entitled under Article 5-E(1)(a) for the period prior to his or her Retirement Date, and (b) an amount determined by multiplying the annual amount to which such Retired Partner is entitled under Article 5-E(2) by a fraction consisting of one-twelfth (1/12) for each calendar month of such Fiscal Year elapsed commencing with the later of (i) the first month of the Fiscal Year, or (ii) the first month of retirement (including the month in which retirement occurred if, but only if, retirement occurred before the 10th day of such

month) and ending with the death of such Retired Partner (including the month in which death occurred if, but only if, such death occurred on or after the 10th day of such month).

(4)   <u>Reduction for Retirement Under Age Sixty (60)</u>.

(a)   <u>Retirement Due to Being Disabled</u>.

(i)   Except as provided in subparagraph (ii) below, with respect to any Active or Consulting Partner designated by the Committee as a Retired Partner after having attained age fifty (50) but before attaining age sixty (60) due to being Disabled, the Participation in the Earnings of the Partnership of such Retired Partner computed in accordance with the provisions of Article 5-E(2) (including, without limitation, the reductions imposed by Article 5-E(2)(d)) shall be reduced ten percent (10%) for each of the first three (3) years (including a fractional year) by which the age of such Retired Partner upon becoming a Retired Partner shall be less than sixty (60), and five percent (5%) for each of the seven (7) years (including a fractional year) by which the age of such Retired Partner upon becoming a Retired Partner shall be less than fifty-seven (57).

(ii)   Notwithstanding subparagraph (i) above, for any partner who is an Active Partner as of December 30, 1992 and who thereafter becomes a Retired Partner after attaining age fifty (50) but prior to attaining age sixty (60) due to being Disabled, the amount of such reduction shall be five percent (5%) for each year by which the age of such Retired Partner upon becoming a Retired Partner shall be less than sixty (60).

(iii)   Pursuant to subparagraphs (i) and (ii) above, the amount of Participation in the Earnings of the Partnership for an Active Partner designated as a Retired Partner due to being Disabled would be seventy percent (70%) of the amount computed in accordance with Article 5-E(2) for becoming a Retired Partner at age fifty-seven (57) (eighty-five percent (85%) in the case of Active Partners on December 30, 1992) and thirty-five percent (35%) at age fifty (50) (fifty percent (50%) in the case of Active Partners on December 30, 1992).

(b)   <u>Retirement Other than Due to Being Disabled</u>.   With respect to any Active or Consulting Partner designated by the Committee as a Retired Partner after having attained age fifty (50) but before attaining age sixty (60) for any reason other than being Disabled, the Committee may, in its sole discretion, award such Retired Partner (i) retirement benefits computed pursuant to Article 5-E(4)(a)(i), (ii) no retirement benefits, (iii) retirement benefits smaller in amount than those computed pursuant to Article 5-E(4)(a)(i), or (iv) retirement benefits equal to or less than those computed pursuant to Article 5-E(4)(a)(i) but commencing at a later date than such Retired Partner's Retirement Date (but in no event later than the Fiscal Year following the Fiscal Year in which such Retired Partner shall attain age sixty-five (65)).   If such

retirement benefits are deferred until after such Retired Partner's Retirement Date, then the maximum amount of the benefits which the Committee may award shall be increased to the amount specified in Article 5-E(4)(a)(i), and shall be subject to adjustment pursuant to Article 5-I, as if such Retired Partner had retired on the date such benefits commence.

(5)     Retirement Prior to Attaining Age Fifty (50).   The extent of Participation in the Earnings of the Partnership of an Active Partner who becomes a Retired Partner prior to attaining age fifty (50) shall be entirely in the discretion of the Committee; provided that such Participation in the Earnings of the Partnership shall not exceed the maximum Participation in the Earnings of the Partnership to which such Retired Partner would have been entitled under Article 5-E(4) if such Retired Partner had retired at age fifty (50).   In exercising such discretion the Committee shall give due consideration to, among other things, the continued value to the Partnership of such Retired Partner, the needs of such Retired Partner and the financial means of the Partnership.

(6)     Additional Discretionary Participation of Retired Partner.   In addition to the amounts hereinabove provided in this Article 5-E, the Committee may, in its discretion, pay a partner who becomes a Retired Partner prior to attaining age sixty (60) an additional amount not to exceed the amount of such Retired Partner's Participation in the Earnings of the Partnership for the Fiscal Year prior to his or her retirement, in such installments as the Committee shall determine, but in no event over a period which exceeds twenty-four (24) months following such Retired Partner's Retirement Date.

F.     **Phased Reduction in Participations**.

(1)     Phasedown in Earnings and Practice.   Notwithstanding the provisions of Article 1-D(4) and (5) and Article 4, the Participations in the Earnings of the Partnership of an Active or Contract Partner shall, commencing with the Fiscal Year in which such Active or Contract Partner attains age sixty-six (66), be the base amount of the Participation in the Earnings of the Partnership to which such Active or Contract Partner would be entitled under the provisions of Article 5-E(2)(a) if he or she had retired on the first day of the Fiscal Year in which he or she attained age sixty-six (66), together with that additional amount of Participation in the Earnings of the Partnership hereinafter provided in this Article 5-F(1).   In addition to such base amount Participation in the Earnings of the Partnership of an Active or Contract Partner, commencing with the Fiscal Year in which such Active or Contract Partner attains age sixty-six (66) as hereinbefore provided, such Active or Contract Partner's Participation in the Earnings of the Partnership shall also include an additional sum which shall not exceed a fraction of the amount, if any, by which the greater of (i) his or her actual Participation in the Earnings of the Partnership for the Fiscal Year in which such Active or Contract Partner attained age sixty-five (65), or (ii) his or her Retirement Base (as defined in Article 5-E(2)(c)) exceeds the amount of such base amount Participation in the Earnings of the Partnership, for the Fiscal Year in which such Active or Contract Partner attains the indicated age in accordance with the following schedule:

| Age | Fraction of Excess Over Retirement Participation |
|---|---|
| 66 | 3/4 |
| 67 | 1/2 |
| 68 | 1/4 |
| 69 and thereafter | 0 |

An Active, Contract or Consulting Partner whose Participations in the Earnings of the Partnership are being or have been reduced in accordance with this Article 5-F may, notwithstanding the provisions of Article 2, make appropriate commensurate reductions in his or her active participation in the affairs of the Partnership. However, it is contemplated that each Active or Contract Partner who elects to continue an active practice of law on behalf of the Partnership on a diminishing basis during the period of time from the Fiscal Year in which any such Active or Contract Partner attains age sixty-six (66) through the Fiscal Year in which such Active or Contract Partner attains age sixty-eight (68) will continue as a productive practitioner in such active practice on behalf of the Partnership during that period of time. If any such Active or Contract Partner does not continue such active practice and does not thereby undertake and make contributions to the Partnership in a manner reasonably commensurate with the diminishing responsibilities and Participation in the Earnings of the Partnership of such Active or Contract Partner during that period of time, then and in that event the Committee may, in its discretion, on a year-to-year basis, reduce or entirely eliminate any part or all of the additional Participation in the Earnings of the Partnership hereinabove designated as a "Fraction of Excess Over Retirement Participation" which any such Active or Contract Partner would otherwise receive for any Fiscal Year during that period of time from the Fiscal Year in which any such Active or Contract Partner has attained age sixty-six (66) until the Fiscal Year in which any such Active or Contract Partner has attained age sixty-eight (68).

(2)    Early Phasedown. Any Active Partner may elect, by written notice to the Committee prior to the end of the Fiscal Year in which such election is to be effective, to commence such Phasedown (i) in the Fiscal Year in which such Active Partner attains age sixty (60) (or any subsequent Fiscal Year prior to the Fiscal Year in which such Active Partner attains age sixty-six (66)), or (ii) with the consent of the Committee, in the Fiscal Year in which such Active Partner attains age fifty-six (56) (or any subsequent Fiscal Year prior to the Fiscal Year in which such Active Partner attains age sixty (60)). For purposes of applying the provisions set forth in Article 5-F(1) for an Active Partner in early Phasedown, (i) the base amount of the Participation in the Earnings of the Partnership of any such Active Partner commencing the Phasedown prior to attaining age sixty (60) shall be the base amount to which such Active Partner would be entitled if he or she had attained age sixty (60) in the Fiscal Year prior to the Fiscal Year in which such Active Partner commences the Phasedown, and (ii) for purposes of applying the schedule of additional participations hereinabove designated as a "Fraction of Excess Over Retirement Participation," the references to age sixty-five (65) shall mean the age of such Active Partner at the end of the Fiscal Year preceding commencement of early Phasedown, and the references to ages sixty-six (66), sixty-seven (67) and sixty-eight (68) shall mean his or her age at the end of the three

001.468981.1

succeeding Fiscal Years. At the beginning of the Fiscal Year following completion of such Phasedown, such Active Partner shall become a Consulting Partner (subject to becoming a Retired Partner or Withdrawing Partner) as hereinafter provided in Article 5-F(5).

(3)    <u>Reduced Retirement Benefits.</u> A number of partners will be entitled to retirement benefits less than the amount determined pursuant to Article 5-E(2)(a), or denied retirement benefits altogether, by virtue of (i) the length of service provisions of Article 5-E(2)(d), (ii) the reductions imposed for early retirement in Article 5-E(4)(a), (iii) reductions set forth in agreements with a number of Lateral Entry Partners, and (iv) any other applicable provision. The Participations in the Earnings of the Partnership of any such partner during the Phasedown shall be computed as if such partner were entitled to the retirement benefit determined under Article 5-E(2)(a) even though the retirement benefit to which such partner would otherwise be entitled is so limited or denied to such partner.

(4)    <u>Exceptions.</u> The provisions of this Article 5-F shall not apply to Allen M. Taylor, Harrold J. McComas, Lyman A. Precourt, Robert B. Bradley and Richard H. Miller, each of whom commenced the Phasedown prior to December 30, 1992, and whose Phasedown shall instead be governed by the provisions of Article 5-F of the Old Partnership Agreement. However, all other provisions of this Agreement, including without limitation the provisions of Article 5 relating to Participations in the Earnings of the Partnership of Retired and Consulting Partners and of Spouses, Issue and Personal Representatives of Deceased Partners, shall apply to such partners who are in the Phasedown on December 30, 1992.

(5)    <u>Consulting Partners.</u> At the beginning of the Fiscal Year in which an Active Partner attains age sixty-nine (69), such partner shall *ipso facto* become a Consulting Partner, and shall thereafter continue as a Consulting Partner until such Consulting Partner's death, unless and until he or she becomes a Retired Partner or Withdrawing Partner by his or her election or by action of the Committee as provided in Article 5-B or C. The Participation in the Earnings of the Partnership of a Consulting Partner shall be the amount to which such Consulting Partner would have been entitled if such Consulting Partner had become a Retired Partner on the date he or she became a Consulting Partner. A Consulting Partner shall not engage in the practice of law except on behalf of the Partnership, but may engage in other gainful occupation or employment.

G.    **Continued Participation of Surviving Spouses.**

(1)    <u>Surviving Spouse of Retired or Consulting Partner.</u> The Surviving Spouse of a partner dying after becoming a Retired or Consulting Partner but prior to the end of the Fiscal Year in which such Retired or Consulting Partner would have attained age eighty-five (85) shall be entitled to participate in the Earnings of the Partnership for each Fiscal Year commencing after the death of such Retired or Consulting Partner and prior to the earliest of the remarriage or death of such Surviving Spouse, or the date on which such deceased Retired or Consulting Partner would have attained age eighty-five (85), to the extent of fifty percent (50%) of the amount of the Participation in the Earnings of the Partnership to which such deceased Retired or Consulting Partner would have been entitled if he or she had lived throughout such period.

The Participation in the Earnings of the Partnership of a Surviving Spouse of a deceased Retired or Consulting Partner shall be subject to the following conditions, where applicable:

(a)     For the Fiscal Year in which the death of such Retired or Consulting Partner shall occur, such Surviving Spouse shall receive an amount equal to the amount payable to such Surviving Spouse in the first Fiscal Year following the death of such Retired or Consulting Partner pursuant to the preceding paragraph of Article 5-G(1), multiplied by a fraction consisting of one-twelfth (1/12) for each calendar month of such Fiscal Year commencing with the death of such Retired or Consulting Partner (including the month in which death occurred if, but only if, such death occurred before the 10th day of such month) until the end of such Fiscal Year; and

(b)     If such Surviving Spouse should either remarry or die prior to or during the Fiscal Year in which the deceased Retired or Consulting Partner would have attained age eighty-five (85), his or her Participation in the Earnings of the Partnership shall be an amount determined by multiplying the sum he or she would have received if he or she had not remarried or had lived for the entire Fiscal Year by a fraction consisting of one-twelfth (1/12) for each calendar month in such Fiscal Year (including the month in which his or her remarriage or death occurred if, but only if, such remarriage or death occurred on or after the 10th day of such month) elapsed at the time of his or her remarriage or death.

(2)     <u>Joint and Survivor Annuity</u>.  Instead of the payments provided in Article 5-E and 5-G(1), an Active Partner may elect to have such Active Partner, the spouse of such Active Partner (as defined and limited in Article 5-A(7)) and the survivor of them, receive payments in the form of a joint and survivor annuity under which a percentage of the amount that such Retired or Consulting Partner would otherwise have received shall be paid to such Retired or Consulting Partner during his or her lifetime, and fifty percent (50%) of such reduced amount so paid to such Retired or Consulting Partner shall be paid to such Surviving Spouse, if he or she survives such Retired or Consulting Partner until the death or remarriage of such Surviving Spouse.  The Committee shall advise each retiring partner, and each partner completing the Phasedown, of the effect that an election of the joint and survivor annuity form of payment would have on the amounts which would be payable to such partner during his or her lifetime, and to his or her Surviving Spouse after such partner's death, pursuant to Article 5-E and 5-G(1). Such effect shall be determined on the basis of such actuarial assumptions as the Committee, in its sole discretion, shall determine.  Such partner shall then have a period of ninety (90) days after receipt of such information, or until his or her Retirement Date (or, as the case may be, the date on which he or she completes the Phasedown), if later, in which to advise the Committee of such partner's election of the joint and survivor annuity.  An election to take the joint and survivor annuity shall be irrevocable after such partner's Retirement Date (or, as the case may be, the date on which he or she completes the Phasedown).

(3)     <u>Surviving Spouse of Active Partner</u>.  The Surviving Spouse of an Active Partner dying before becoming a Retired or Consulting Partner shall, after consultation with the Committee, be entitled to elect one of the following options by written notice to the Committee given within sixty (60) days following the death of such Active Partner:

16

(a)    Option 1.  Payments to Personal Representative of Deceased Partner. Payments on the death of such Active Partner in an amount and at the times and under the conditions provided in Article 5-H(1)(a) and (b).

(b)    Option 2.  Continued Participation of Surviving Spouse. Participation in the Earnings of the Partnership in an amount and for the time and in the manner to which such Surviving Spouse would have been entitled if the Deceased Partner had become a Retired Partner due to being Disabled on the day preceding his or her death, as determined under Article 5-G(1); provided, that with respect to the Surviving Spouse of any partner who is an Active Partner as of December 30, 1992 and who thereafter dies before becoming a Retired or Consulting Partner, the amount to which such Surviving Spouse shall be entitled shall be the greater of (i) fifty percent (50%) of the amount of the Participation in the Earnings of the Partnership to which such Deceased Partner would have been entitled if he or she had lived throughout such period, or (ii) twenty-five percent (25%) of the amount determined by computing the average Participation in the Earnings of the Partnership for the Fiscal Year preceding the Fiscal Year in which the death of such Deceased Partner occurred, of the five (5) Active Partners whose Participations in the Earnings of the Partnership for such Fiscal Year were the lowest of any group of five (5) Active Partners who have been associated with the Partnership continuously (except for periods not exceeding one (1) year in the aggregate) since their admission to the bar and who devoted their full time and earning capacity to the affairs of the Partnership during such Fiscal Year. For purposes of this Article 5-G(3), an Active Partner who dies prior to attaining age fifty (50) shall be deemed nevertheless to have attained such age on the day preceding his or her death, and an Active Partner who dies prior to completing ten (10) years of service with the Partnership as an attorney shall be deemed nevertheless to have completed such ten (10) years of service.

In the event a Surviving Spouse shall effectively elect Option 2 described above, the Personal Representative of the Deceased Partner shall nevertheless be entitled to the payment provided in Article 5-H(1)(a).

H.    **Payments on Death**. To enable the estate of a Deceased Partner leaving a Surviving Spouse or Issue surviving such Deceased Partner to participate in Earnings of the Partnership to which he or she contributed but which were not realized prior to the death of such Deceased Partner, payments shall be made as hereinafter set forth in this Article 5-H:

(1)    Death Before Becoming a Retired or Consulting Partner. Upon the death of an Active Partner leaving a Surviving Spouse or Issue surviving, the Personal Representative of the estate of such Deceased Partner shall be entitled to receive:

(a)    the Participation in the Earnings of the Partnership of such Deceased Partner for the preceding Fiscal Year, multiplied by a fraction consisting of one-twelfth (1/12) for each calendar month of the Fiscal Year of death (including the month in which death occurred if, but only if, death occurred on or after the 10th day of such month) elapsed at the date of death, reduced by the sum of all drawing account payments and interim distributions made to such Deceased Partner during such Fiscal Year prior to the date of his or her death; provided, that if such death shall have occurred in or after the Fiscal Year in which such Deceased Partner commenced the

17

Phasedown, the amount multiplied by such fraction shall not exceed the maximum amount to which such Deceased Partner would have been entitled from the Earnings of the Partnership for the Fiscal Year of his or her death under the provisions of Article 5-F if he or she had not died;

plus, unless a Surviving Spouse shall have elected Option 2 under Article 5-G(3),

(b)     An amount equal to the average of such Deceased Partner's three (3) highest annual Participations in the Earnings of the Partnership (determined as set forth in Article 5-E(2)(c)) prior to (i) the Fiscal Year of such Deceased Partner's death, or (ii) the Fiscal Year in which such Deceased Partner commenced the Phasedown, whichever shall first occur; provided, that in the case of a Deceased Partner who has been an Active Partner for at least one (1) but less than three (3) full Fiscal Years, the amount shall be equal to the average Participation in the Earnings of the Partnership for the full Fiscal Years during which he or she was an Active Partner; and provided further, that in the case of a Deceased Partner who has been an Active Partner for less than one (1) full Fiscal Year, the amount shall be equal to the greater of (i) the minimum amount to which such Deceased Partner would have been entitled, on an annualized basis, in the Fiscal Year of his or her death had he or she continued as an Active Partner through the end of such Fiscal Year, under any contract with the Partnership, or (ii) the amount determined by computing the average Participation in the Earnings of the Partnership for the Fiscal Year preceding the Fiscal Year in which the death of such Deceased Partner occurred, of the five (5) Active Partners whose Participations in the Earnings of the Partnership for such Fiscal Year were the lowest of any group of five (5) Active Partners who have been associated with the Partnership continuously (except for periods not exceeding one (1) year in the aggregate) since their admission to the bar and who devoted their full time and earning capacity to the affairs of the Partnership during such Fiscal Year; and provided, finally, that, subject to Article 5-E(2)(d)(ii), with respect to any partner who shall have become an Active Partner after December 30, 1992 and who shall thereafter die with less than thirty (30) years of service with the Partnership (as defined in Article 5-E(2)(d)(i), then such amount shall be reduced by three and one-third percent (3 1/3%) for each year or partial year by which such Deceased Partner's years of service with the Partnership are less than thirty (30). The period of time during which the amount payable pursuant to this Article 5-H(1)(b) shall be paid shall be as determined by the Committee, after giving full consideration to the probable amount of earnings reasonably attributable to the activities of such Deceased Partner available for distribution in future years and the period during which they will be realized; but in no event shall the number of Fiscal Years within which such payment is made be less than two (2) nor more than ten (10) Fiscal Years.

(2)     Retired or Consulting Partner Leaving No Surviving Spouse but Issue Surviving.  Upon the death of a Retired or Consulting Partner leaving no Surviving Spouse but Issue surviving him or her, the Personal Representative of such Retired or Consulting Partner shall continue to participate in the Earnings of the Partnership in the amount and manner provided in Article 5-H(1)(b), but only to the extent that the amount to which such Personal Representative would have been entitled under the provisions of Article 5-H(1)(b), if such Retired or Consulting Partner had died on the date preceding

the date such partner became a Retired or Consulting Partner, exceeds the actual aggregate Participations in the Earnings of the Partnership distributed to such Retired or Consulting Partner subsequent to his or her becoming a Retired or Consulting Partner.

(3)     **Death of Surviving Spouse of Deceased Partner Survived by Issue of Partner.**  Upon the death of the Surviving Spouse of a Deceased Partner leaving Issue of such Deceased Partner then surviving, if the retirement benefits received by the Surviving Spouse, together with those retirement benefits, if any, received by such Deceased Partner prior to his or her death, shall not have been the equivalent of that to which the Personal Representative of the estate of such Deceased Partner would have been entitled under the provisions of Article 5-H(1)(b), the Personal Representative of the estate of such Surviving Spouse shall continue to participate in the Earnings of the Partnership in the amount and manner provided in Article 5-H(1)(b), but only to the extent that the amount under Article 5-H(1)(b) exceeds the actual aggregate Participations in the Earnings of the Partnership distributed to such Surviving Spouse and, in the case of a Retired or Consulting Partner, to such partner, subsequent to his or her becoming a Retired or Consulting Partner.  For the purposes of this Article 5-H(3), in the case of the Surviving Spouse of a Retired or Consulting Partner, the amount under Article 5-H(1)(b) shall be the amount which the Personal Representative of the estate of such Deceased Partner would have been entitled under the provisions of Article 5-H(1)(b), if such Deceased Partner had died on the day preceding the date such Deceased Partner became a Retired or Consulting Partner.

(4)     **Children of Deceased Partner with No Surviving Spouse.**  If at any time a Deceased Partner shall have no Surviving Spouse entitled to participate in the Earnings of the Partnership (or such Surviving Spouse shall have remarried), and if in any Fiscal Year there are one or more Children of such Deceased Partner who shall have attained the age of seventeen (17) but shall not have attained the age of twenty-six (26) who are attending an accredited college or graduate school on a full-time basis (as interpreted by the Committee), then each such Child shall be entitled in each Fiscal Year prior to the Fiscal Year in which he or she attains age twenty-six (26) and attends such a school for a portion of such Fiscal Year to receive the sum of Ten Thousand Dollars ($10,000); provided, that the aggregate amount payable with respect to the Children of any Deceased Partner shall not exceed One Hundred Fifty Thousand Dollars ($150,000).

(5)     **Death Without Surviving Spouse or Issue.**  The heirs or Personal Representative of a Deceased Partner who leaves no Surviving Spouse or Issue surviving such Deceased Partner shall have no right to participate in the Earnings of the Partnership; provided, that such Personal Representative shall have no obligation to repay the drawing account payments or interim distributions paid to such Deceased Partner prior to his or her death pursuant to Article 4-A, except to the extent required of all partners pursuant to the last sentence of such Article 4-A.

     I.    **Adjustments in Retirement Participations and Death Benefits.**  Notwithstanding the foregoing provisions of this Article 5, the Participations in the Earnings of the Partnership of Retired and Consulting Partners and the Surviving Spouses and Personal Representatives of Deceased Partners for any Fiscal Year shall be subject to the following adjustments:

001.468981.1

(1)    <u>Increases in Retirement and Death Benefits</u>.   The amount payable to a Retired or Consulting Partner pursuant to Article 5-E or F, or to the Surviving Spouse of a Deceased Partner pursuant to Article 5-G(1), G(2) or G(3)(b), commencing with the earlier of:

(i)    the Fiscal Year following the Fiscal Year in which such partner completes the Phasedown, or

(ii)    the second Fiscal Year following the Fiscal Year in which such partner shall have retired (or be deemed to have retired for purposes of this Article 5 by virtue of his or her death as provided in Article 5-G(3)(b));   provided, that for the purposes of this Article 5-I(1)(ii) (but not for purposes of determining the Base Year of such partner under Article 5-I(1)(c)), any partner who retires during the first nine days of any Fiscal Year shall be deemed to have retired on the last day of the preceding Fiscal Year,

and each Fiscal Year thereafter, shall be adjusted (but not below that which would otherwise be payable pursuant to the aforementioned provisions) by multiplying such amount by the lesser of (i) the Partnership Income Index, or (ii) the Cost Index (as such terms are defined below) applicable to such partner for such Fiscal Year.

(a)    <u>Partnership Income Index</u>.   For purposes of this Article 5-I(1), the Partnership Income Index applicable to a partner for a given Fiscal Year shall be a fraction, the numerator of which shall be:

the average of the aggregate Participations in the Earnings of the Partnership with respect to the immediately preceding Fiscal Year of all of the Active Partners who devoted their full time and earning capacity to the affairs of the Partnership during all of such Fiscal Year (thereby excluding, without limitation, Contract Partners, Phasedown Partners, Part-time Partners, partners who died, retired or withdrew during such Fiscal Year, and partners who became partners after commencement of such Fiscal Year;

and the denominator of which shall be:

the average of the aggregate Participations in the Earnings of the Partnership with respect to the Fiscal Year which constitutes such partner's Base Year of all of the Active Partners who devoted their full time and earning capacity to the affairs of the Partnership during all of such Fiscal Year (thereby excluding, without limitation, Contract Partners, Phasedown Partners, Part-time Partners, partners who died, retired or withdrew during such Fiscal Year, and partners who became partners after commencement of such Fiscal Year.

(b)    <u>Cost Index</u>.   For purposes of this Article 5-I(1), the Cost Index applicable to any partner in respect of any Fiscal Year shall be a fraction, the numerator of which shall be:

20

the Consumer Price Index for All Urban Consumers, United States City Average, "All Items" (1967 = 100) published by the Bureau of Labor Statistics, United States Department of Labor (the "CPI") for the month of December of the immediately preceding Fiscal Year;

and the denominator of which shall be:

the CPI for the month of December of the Fiscal Year which constitutes such partner's Base Year.

(c)  Base Year.  For purposes of the foregoing, a partner's Base Year shall be the earlier of the Fiscal Year immediately preceding (i) the Fiscal Year in which such partner commenced the Phasedown, or (ii) the Fiscal Year in which such partner shall have retired (or be deemed to have retired for purposes of this Article 5 by virtue of his or her death as provided in Article 5-G(3)(b)); provided, that if such partner shall have retired or died on or after the tenth day of the last month of such Fiscal Year, such partner shall be deemed to have retired or died on the first day of the following Fiscal Year for purposes of determining his or her Base Year.

(d)  Alternative Cost Index.  In the event that the CPI shall cease to be published, the Cost Index shall be determined by application of such other comparable index or indexes (published by the Department of Labor or other appropriate United States agency) which are determined by the Committee in its absolute discretion to reflect changes in the cost of living from year to year on a basis comparable to that reflected in the CPI.

(2)  Reduction in Retirement and Death Benefits.  The aggregate Retirement Payments for any Fiscal Year shall not exceed ten percent (10%) of the Earnings of the Partnership for such Fiscal Year available for distribution to Active Partners, Contract Partners, Retired Partners, Consulting Partners, Withdrawing Partners, and Surviving Spouses, Issue and Personal Representatives of Deceased Partners.  In any Fiscal Year in which the operation of this Article 5-I(2) results in a reduction in aggregate Retirement Payments, such reduction shall be borne pro rata by the persons eligible for such Retirement Payments, on the basis of the amounts (adjusted where applicable pursuant to Article 5-I(1) above, but before deduction of any Funded Pension Plan Distribution pursuant to Article 5-I(3) below) each would have received but for the operation of this Article 5-I(2).

(3)  Offset of Funded Pension Plan Distributions.  The Retirement Payment for any Fiscal Year to any person shall be reduced (but not below zero) by the Funded Pension Plan Distribution to which such person is deemed to be entitled for such Fiscal Year, determined as provided in (a), (b) and (c) below,  with (a) being applied before (b).  If the Funded Pension Plan Distribution payable with respect to any Retired or Consulting Partner for any Fiscal Year exceeds the Retirement Payment otherwise payable (after reduction pursuant to Article 5-I(2) for such Fiscal Year to such Retired or Consulting Partner and his or her Surviving Spouse, Issue or Personal Representative, the amount of the excess shall be carried forward and be deemed to be a Funded Pension Plan Distribution to such Retired or Consulting Partner or his or her Surviving Spouse, Issue or Personal Representative in succeeding years.

001.468981.1

(a)     With respect to benefits under the Foley & Lardner Partners' Pension Plan and any other defined benefit pension plan, the amount of Funded Pension Plan Distribution to which any person is deemed to be entitled for any Fiscal Year shall be determined as follows:

(i)     In the case of a Retired or Consulting Partner who makes the election described in Article 5-G(2), the amount shall be equal to the amount such Retired or Consulting Partner actually received from such Funded Pension Plan for such Fiscal Year.

(ii)     In the case of a Retired or Consulting Partner who does not make the election described in Article 5-G(2), the amount shall be equal to the amount such Retired or Consulting Partner would have received from such Funded Pension Plan for such Fiscal Year if he or she had elected to receive benefits thereunder in the form of an annuity for such Retired or Consulting Partner's life only; provided, that there shall be no offset for any Fiscal Year for which such Retired or Consulting Partner actually received no payments from such Funded Pension Plan; and

(iii)     In the case of a Surviving Spouse, Issue or Personal Representative of a Deceased Partner, the amount shall be equal to the amount which such person actually received from such Funded Pension Plan for such Fiscal Year.

(b)     With respect to benefits under the Foley & Lardner Defined Contribution Retirement Plan, the amount of Funded Pension Plan Distribution to which any person is deemed to be entitled for any Fiscal Year shall be equal to the amount actually distributed to such person from such Funded Pension Plan for such Fiscal Year. Notwithstanding the preceding sentence, amounts distributed from the Foley & Lardner Defined Contribution Retirement Plan shall not be considered Funded Pension Plan Distributions to the extent such amounts are derived from

(i)     the partner's own voluntary contributions (whether pre-tax or after-tax, and including all income thereon), or

(ii)     any other contributions (including all income thereon) made for Fiscal Years ending on or before January 31, 1992, to the Foley & Lardner Voluntary Retirement Savings Plan or the Foley & Lardner Mandatory Retirement Savings Plan (or any predecessor of or successor to either of them).

(c)     In the event that any portion of the benefits accrued for any partner under a Funded Pension Plan is (i) pursuant to court order or otherwise, payable to or for the benefit of a former spouse or a Child of the partner or any other third party, or (ii) for any reason including, but not limited to, the termination of a Funded Pension Plan, distributed prior to such partner's retirement or death, the amount so payable or distributed or the actuarial equivalent value thereof (based on such actuarial assumptions as the Committee, in its sole discretion, shall determine) shall be deemed

001.468981.1

to be a Funded Pension Plan Distribution to which such partner or such partner's Surviving Spouse, Issue or Personal Representative is deemed to be entitled at such time and in such manner as the Committee, in its sole discretion, shall determine.

      **J.**    **Participation of Withdrawing Partner.**  A Withdrawing Partner shall be entitled to participate in the Earnings of the Partnership for the Fiscal Year in which he or she ceases to be an Active Partner, but only to the extent of an amount equal to the sum of all drawing account payments and interim distributions made to such Withdrawing Partner during such Fiscal Year prior to his or her Withdrawal Date, plus such additional amount, if any, as the Committee, in its sole discretion, shall determine pursuant to its authority under Article 1-D(4) and Article 4; provided, that the total amount payable pursuant to this sentence of Article 5-J shall not exceed the total amount of such Withdrawing Partner's Participation in the Earnings of the Partnership for the preceding Fiscal Year, multiplied by a fraction consisting of one-twelfth (1/12) for each calendar month of the Fiscal Year of withdrawal (including the month in which withdrawal occurred if, but only if, withdrawal occurred on or after the 10th day of such month) elapsed at the date of withdrawal; provided, further, that if such withdrawal shall have occurred in or after the Fiscal Year in which such Withdrawing Partner commenced the Phasedown, the amount multiplied by such fraction shall not exceed the maximum amount to which such Withdrawing Partner would have been entitled from the Earnings of the Partnership for the Fiscal Year of his or her withdrawal under the provisions of Article 5-F if he or she had not so withdrawn.  A Withdrawing Partner shall be entitled to no other or further Participation in the Earnings of the Partnership; provided, that the Committee may, in its discretion, pay a Withdrawing Partner an additional amount not to exceed the amount of such Withdrawing Partner's Participation in the Earnings of the Partnership for the Fiscal Year prior to his or her withdrawal, in such installments as the Committee shall determine, but in no event over a period which exceeds twenty-four (24) months following such Withdrawing Partner's withdrawal.

      **K.**    **Phase-In of Retirement and Death Benefits of Lateral Entry Partners.**  Pursuant to its authority under Article 1-D(5), the Committee has entered into agreements with a number of Active Partners and groups of Active Partners who joined the Partnership directly as Lateral Entry Partners.  Many of such agreements provide for a phase-in of retirement and/or death benefits over periods of up to approximately twenty-five (25) years with respect to retirement benefits and approximately ten (10) years with respect to death benefits, and some of such agreements provide a further percentage limitation (e.g., sixty percent (60%)) upon the benefits payable under this Agreement.  All such provisions for phase-in and/or percentage limitations, and the resulting reductions in the amounts payable upon the retirement or death of such a Lateral Entry Partner, are intended to apply only to retirement and death benefits, and accordingly, are not intended to and shall not apply to the compensation of a Retired or Deceased Partner for the Fiscal Year of such partner's retirement or death, as the case may be, for the portion of such Fiscal Year prior to such partner's retirement or death, determined pursuant to Article 5-E(1)(a) or 5-H(1)(a), as the case may be.

      **L.**    **Fiduciary Fees and Professional Services.**

(1)    As set forth in Article 2-A(1), each Active and Consulting Partner is required to turn over to the Partnership all fees received as a fiduciary (except those related to the personal investments of such Active or Consulting Partner, or arising out of the administration of the affairs of such Active or Consulting Partner's family, or as otherwise specifically agreed to by the Committee).  In keeping with this requirement:

001.468981.1

(a)     similar fees and income of a Retired Partner which result from activities or relationships related to either the Partnership or work performed by the Retired Partner prior to his or her Retirement Date shall be paid over to the Partnership to the same extent as they would be if such Retired Partner had continued to be an Active Partner; and

(b)     similar fees and income of a Withdrawing Partner which result from activities or relationships related to either the Partnership or work performed by the Withdrawing Partner prior to, or within twelve (12) months following, such Withdrawing Partner's Withdrawal Date shall likewise be paid over to the Partnership to the same extent as they would be if such Withdrawing Partner had continued to be an Active Partner.

(2)    As set forth in Article 2-A(2), each Active and Consulting Partner is also required to turn over to the Partnership all consulting fees, seminar fees, honoraria, teaching salaries, compensation for services as an officer, employee and/or partner of another organization, fringe benefits, and all other compensation and remuneration attributable to his or her professional endeavors (except those related to the personal investments of such Active or Consulting Partner or arising out of the affairs of such Active or Consulting Partner's family, or as otherwise specifically agreed to by the Committee). Inasmuch as Retired Partners and Withdrawing Partners are no longer required to devote their entire working time and attention to the affairs of the Partnership, then (subject to the provisions of Article 9-D in the case of Retired Partners) each such Retired and Withdrawing Partner shall be entitled to retain compensation described in Article 2-A(2) for services performed following his or her retirement or withdrawal (except services performed, without the consent of the Committee, in violation of Article 9-D), even though such services relate to an activity or relationship conducted or established prior to such retirement or withdrawal.

(3)    In addition, although it is customary for Retired and Consulting Partners to terminate the performance of professional services for clients of the Partnership upon reaching that status, from time to time there are occasions when it is in the best interests of the Partnership for a Retired or Consulting Partner to perform such services for clients of the Partnership. The performance of such professional services or other performance of the services giving rise to the receipt of fees as a director, personal representative, trustee, guardian ad litem or similar compensation which are required to be paid to the Partnership by Article 5-L(1) may subject such Retired or Consulting Partner to liability for self-employment tax and/or loss of Social Security benefits. In any such case the Committee may, in addition to any other amounts to which such Retired or Consulting Partner is entitled under the provisions of this Agreement, reimburse such Retired or Consulting Partner for all or part of (i) the self-employment tax (if any) imposed on such Retired or Consulting Partner, and (ii) the amount by which the Social Security benefits payable to such Retired or Consulting Partner are reduced, by virtue of the performance of such services (including such additional amount as is necessary to reimburse such Retired or Consulting Partner for federal income taxes arising from such reimbursement of self-employment and federal income taxes) if the Committee in its sole discretion determines such reimbursement to be in the best interests of the Partnership.

(4)     If, after the death of any Active, Contract, Retired, Consulting or Withdrawing Partner, any such fees which would have been payable to the Partnership if such partner had not died are received by the Personal Representative of the estate of such deceased partner, representing earnings by reason of activity of such partner during the lifetime of such partner, such fees shall likewise be paid over to the Partnership.

(5)     If any Retired, Consulting, Withdrawing or Deceased Partner (or the Personal Representative and/or heirs, successors and assigns of such partner) shall fail or refuse to pay over to the Partnership any such fees or other compensation payable to the Partnership (or any other amount owed to the Partnership, for whatever reason) the Partnership shall be entitled to offset the amount so owed to it against any other claim of or payment due to such partner, or to the Surviving Spouse, Issue or Personal Representative of such partner.

**M.     Discretion of Committee.** It is contemplated that the Committee may exercise broad discretion under this Article 5; and, unless arbitrary, capricious or lacking in good faith, the Committee's determinations as to whether an Active or Consulting Partner may or shall be required to withdraw or retire [Article 5-B and C], changes in the status of Retired Partners [Article 5-D], the participations, if any, of Active Partners retiring prior to attaining age fifty (50) [Article 5-E(5)], the period for making payments upon the death of a partner [Article 5-H], and other matters of judgment involved in the interpretation and administration of the provisions of this Article 5 shall be final and conclusive, notwithstanding the personal interests of its members, and shall not be open to question in any court or other proceeding.

**6.     TIME OF PAYMENTS.** The amounts to be received by any Retired or Withdrawing Partner following the retirement or withdrawal of such partner, by any Consulting Partner upon becoming a Consulting Partner, or by the Surviving Spouse of any Deceased Partner, determined in accordance with the provisions of the foregoing Article 5, shall be payable as follows:

**A.     Retired and Consulting Partners and Surviving Spouses.** The annual amount to be paid to any Retired or Consulting Partner, or to the Surviving Spouse of any Deceased Partner, shall be estimated or determined by the Committee at the beginning of each Fiscal Year and, to the extent that the Earnings of the Partnership permit, shall be paid in equal monthly installments. The amount, if any, to be paid to any Retired Partner pursuant to Article 5-E(6) shall be paid at such times and in such installments as the Committee shall determine, but in no event over a period which exceeds twenty-four (24) months following such Retired Partner's Retirement Date. In the event that the amount paid to any Retired or Consulting Partner, or to the Surviving Spouse of any Deceased Partner, during any Fiscal Year shall exceed the amount to which such Retired or Consulting Partner, or such Surviving Spouse, was entitled for such Fiscal Year, as finally determined, such excess shall be offset against future payments or shall be repaid to the Partnership by the Retired or Consulting Partner or the Personal Representative of such Retired or Consulting Partner, or by such Surviving Spouse or his or her Personal Representative, in such manner as the Committee may direct.

**B.     Withdrawing Partners.** The amount, if any, to be paid to a Withdrawing Partner from the Earnings of the Partnership for the Fiscal Year of his or her withdrawal shall be paid as soon as practicable after it has been determined. The amount, if any, to be paid to such Withdrawing Partner pursuant to the last sentence of Article 5-J shall be paid at such times and in such installments as the Committee shall determine, but in no event over a period which exceeds twenty-four (24) months following such Withdrawing Partner's Withdrawal Date.

001.468981.1

7.     **PARTNERS EMERITUS.**  A Retired Partner shall be regarded as a "Partner Emeritus" and shall, upon retirement, be named as such in an amendment to this Agreement, executed on behalf of the Active Partners by a majority of the Committee.  At the date of this Agreement Vernon A. Swanson, Steven E. Keane, Paul M. Barnes, Marvin E. Klitsner, Marcus A. Hollabaugh, Ephraim Jacobs, James P. Brody, Richard L. Harrington, Orin Purintun, George M. Chester, Herbert P. Wiedemann, William J. Willis, Thomas B. Slade, III, Edwin F. Walmer, Eugene C. Daly, Gilbert W. Church and Frank V. Gay are Retired Partners, and accordingly each is designated as a Partner Emeritus.  Until a Retired Partner attains age seventy-five (75) (and thereafter so long as the Committee in its sole discretion may deem expedient), such Retired Partner shall be entitled to be furnished with reasonable secretarial assistance and office space in the offices of the Partnership as the Committee may deem appropriate for his or her personal use, which office space need not necessarily be the same in quality or location as such Retired Partner occupied as an Active Partner.

8.     **LOANS FROM PARTNERS.**  From time to time the Partnership may be indebted to partners in varying amounts for sums loaned to the Partnership.  The provisions of Article 5 (relating to the amounts to be received by any Retired or Withdrawing Partner or the Personal Representative of a Deceased Partner) and Article 15 (relating to capital contributions), are not intended to affect or be affected by any such indebtedness, and the Partnership shall repay such indebtedness in accordance with its terms.

9.     **TERMINATION OF PARTNER.**

A.     **No Termination of Partnership.**  Neither the death, retirement or withdrawal of any partner, nor any other event causing dissolution of the Partnership pursuant to Section 178.26 of the Wisconsin Statutes (or any other applicable statute, rule or decision) shall terminate the Partnership without the affirmative vote of all members of the Committee as provided in Article 1-D(3).  In any such event, in the absence of such affirmative vote of all members of the Committee to terminate the Partnership (i) the Partnership and its business shall continue under the terms and conditions of this Agreement except for the omission of any such Deceased, Retired or Withdrawing Partner, (ii) no partner or other person shall be entitled to an accounting from the Partnership, and (iii) no partner or other person may require or cause the liquidation of the Partnership, the sale or partition of any Partnership property or the payment of the value of such partner's or person's interest in the Partnership.

B.     **Reconstitution of Partnership.**  In the event of termination of the Partnership, if a new partnership is formed within two (2) years thereafter and such new partnership includes among its members a majority of the Active Partners of this Partnership and more than one member of the Committee (as this Partnership and the Committee, respectively, are constituted immediately prior to termination), such partners shall cause the new partnership to assume and undertake to fulfill all obligations of this Partnership under Article 5 above with respect to partners who became Retired or Consulting Partners prior to the date of such termination and to the Surviving Spouses, Issue and Personal Representatives of Deceased Partners (i) who died prior to the date of termination, or (ii) who died after such date but became Retired or Consulting Partners prior thereto.

C.     **Withdrawal of Partners.**  If three (3) or more of the Active Partners officed in any one office of the Partnership who have not attained age sixty (60) should withdraw from the Partnership without the consent of the Committee within any twelve-month period, then, in addition to any other obligation of such Withdrawing Partner to the Partnership, its partners or its creditors, each such Withdrawing Partner shall:

(1)   pay to the Partnership in each Fiscal Year following, for a period of ten (10) years or until such Withdrawing Partner shall attain age sixty (60), whichever occurs first, a sum of money equal to such Withdrawing Partner's pro rata share of the aggregate Participations in the Earnings of the Partnership, (payable pursuant to the applicable provisions of Article 5 above) subsequent to such Withdrawing Partner's Withdrawal Date of partners who became Retired or Consulting Partners prior to such Withdrawal Date and of the Surviving Spouses, Issue or Personal Representatives of Deceased Partners (i) who died prior to such Withdrawal Date, or (ii) who died after such Withdrawal Date but became Retired or Consulting Partners prior thereto.   For purposes of the preceding sentence, (i) the pro rata share of such Withdrawing Partner shall be the percentage share of the total Earnings of the Partnership (excluding the portion thereof paid to Retired and Consulting Partners and to Surviving Spouses, Issue and Personal Representatives of Deceased Partners) received by such Withdrawing Partner in the Fiscal Year of the Partnership preceding his or her withdrawal, and (ii) the amount payable to Retired or Consulting Partners and to Surviving Spouses, Issue and Personal Representatives of Deceased Partners shall include all amounts actually paid to such persons, and all amounts which would have been paid but for the operation of Article 5-I(2).  The payments due hereunder shall each be due thirty (30) days after such Withdrawing Partner receives a statement showing the amount due and the manner in which such amount was computed; and

(2)   reimburse the Partnership in each Fiscal Year following, for a period of ten (10) years or until such Withdrawing Partner shall attain age sixty (60), whichever occurs first, for the per capita share of such Withdrawing Partner of all subsequent payments made by the Partnership under any lease of office premises of the office of the Partnership in which such Withdrawing Partner maintained his or her principal office.  The portion of the lease payments to be reimbursed by each such Withdrawing Partner shall be that portion of the leased premises that the Partnership is not, from time to time, occupying by reason of the withdrawal of such Withdrawing Partner.   For purposes of this Article 9-C(2), the per capita share of each such Withdrawing Partner shall be the ratio of each Withdrawing Partner to the total number of all such Withdrawing Partners.

The amendments made to this Article 9-C (Article 10-C in the Old Partnership Agreement) shall be effective retroactively as of February 1, 1992.

   **D.    Retired Partners**.  Notwithstanding any other provision of this Agreement, a partner's status as a Retired Partner and all Participations in the Earnings of the Partnership (which do not include any payments due under any Funded Pension Plan), entitlements to office space, secretarial assistance, insurance, or other benefits granted hereby to any Retired Partner, or the Surviving Spouse or Issue thereof, shall be permanently and completely terminated, canceled and forfeited if such Retired Partner, without the consent of the Committee, performs, or assists others in performing, services constituting the practice of law in direct competition with the Partnership prior to his or her 63rd birthday in the case of partners retiring prior to attaining age sixty (60) due to being Disabled, and in all other cases, the third anniversary of the last day upon which he or she actively performed services constituting the practice of law on behalf of the Partnership (i) within the area then designated by the United States Bureau of the Census as the Standard Metropolitan Statistical Area (or comparable designation) for the city in which such Retired Partner maintained his or her principal office within the twelve-month period preceding such last day, or (ii) for clients of the Partnership, wherever located, for which such Retired Partner performed legal services within the two-year period preceding such last

001.468981.1

day. The Committee may require written assurance that such Retired Partner intends to perform no such services at or prior to the time such Retired Partner ceases to perform legal services on behalf of the Partnership or at any time thereafter as a condition of the payment of any retirement benefit hereunder. Prior to terminating, canceling and forfeiting such benefits, the Committee shall provide such Retired Partner with a statement of the conduct considered to violate the foregoing restrictions and an opportunity to discontinue the conduct or to demonstrate that the conduct did not occur.

**10. DIRECTORS' FEES.** In order to identify responsibility for self-employment tax (if any) upon directors' fees paid over to and/or received by the Partnership, the Participation in the Earnings of the Partnership of each partner for each Fiscal Year shall be deemed to include all directors' fees which may be paid over to the Partnership by such partner, or received by the Partnership on account of services rendered by such partner as a director and which are included in income of the Partnership for such Fiscal Year; and if such director's fees constitute self-employment income under the federal income tax laws, the self-employment tax thereon shall be imposed upon and paid by the partner to whom such fees are considered distributable under this Agreement.

**11. ACCOUNTING.** Except as otherwise directed by the Committee:

**A. Books of Account.** The Partnership books of account shall continue to be kept on the present basis.

**B. Cash Basis.** Distribution and all accounting between the partners shall be on a basis of cash receipts and, so far as practicable, there shall continue to be a distribution among the Active Partners monthly to the extent of their respective drawing accounts, and a final accounting shall be had between the Active Partners at the end of each Fiscal Year.

**12. COMMITTEE MEMBERS ATTORNEYS-IN-FACT.** In joining in the execution of this Agreement, each of the undersigned Active Partners severally makes, constitutes and appoints each member of the Committee, as it is constituted from time to time, or any one of them, as his or her true and lawful attorney-in-fact to register, publish, file and/or record any fictitious name under which the Partnership may now or hereafter engage in business as may be required under applicable law. Each of the attorneys-in-fact shall have full power and authority to execute documents and perform other acts necessary and incident to completion of such registrations.

**13. AMENDMENTS.** Except as herein provided in respect to amendments to this Agreement, this Agreement shall constitute the entire agreement between the parties unless modified by an agreement in writing signed by ninety percent (90%) of the Active Partners; provided, that no such amendment shall have the effect of reducing the retirement privileges or Participations in the Earnings of the Partnership for retirement and death benefits of or relating to any Active, Retired or Consulting Partner without the written consent of such partner.

**14. CONTRACT PARTNERS.** Subject to the limitations set forth in Article 1-D(5), the rights, benefits, duties and obligations of each Contract Partner shall be as set forth in the special contract with such Contract Partner, and the provisions of this Agreement shall not apply to any Contract Partner except as expressly set forth in either this Agreement or such special contract with such Contract Partner.

**15. CAPITAL REQUIREMENTS OF ACTIVE PARTNERS.** The Committee may, in its discretion, determine the capital requirements of the Partnership and establish the

contribution obligations of the Partners with respect thereto, subject to the following limitations on such discretion:

        **A.**    Only Active Partners may be required or permitted to make capital contributions. Notwithstanding the limitations of Article 15-B, the Committee may require an initial capital contribution from a Lateral Entry Partner in such amount and payable upon such terms as the Committee may determine.

        **B.**    The capital contribution of each Active Partner shall be withheld from his or her Participation in the Earnings of the Partnership with respect to any Fiscal Year, beginning with the February, 1999 final distribution with respect to the Fiscal Year ended January 31, 1999, provided that:

    (1)    The capital contribution required of an Active Partner with respect to any Fiscal Year shall not exceed 2% of such Active Partner's Participation in the Earnings of the Partnership for such year.

    (2)    Subject to Article 15-B(1), the Committee may establish a different percentage level of contribution for any Active Partner or group of Active Partners, except that the percentage withheld for any particular Active Partner may not be greater than the percentage applicable to any other Active Partner with a greater Participation in the Earnings of the Partnership for such Fiscal Year.

        **C.**    A memorandum capital account ("Allocated Capital") shall be established and maintained for each Active Partner showing such Active Partner's capital contributions and any accrued but unpaid interest thereon. Such Allocated Capital shall not represent an ownership interest in the Partnership or its assets or establish any right to share in the profits of the Partnership and, except as provided in Article 15-E(2) below, shall not serve to restrict the power of the Committee under Article 1-D(3) of this Agreement.

        **D.**    Interest shall accrue on the Allocated Capital of each Active Partner at a rate determined by the Committee, but which shall approximate (i) the average rate payable on the Partnership's debt for each Fiscal Year, or (ii) in the absence of Partnership debt, the average prime rate of interest for such Fiscal Year. Accrued interest for each Fiscal Year shall be paid annually at the same time as the final distribution to Active Partners for such Fiscal Year unless in the judgment of the Committee, it is in the best interests of the Partnership to defer the payment of interest to all Active Partners. Interest paid or accrued on Allocated Capital shall not be treated as Participation in the Earnings of the Partnership.

        **E.**    No Active Partner shall have the right to a return of his or her Allocated Capital except as provided in this Article 15-E.

    (1)    Upon the withdrawal, death, retirement or conversion to Consulting Partner or Contract Partner status of an Active Partner, the amount of such Active Partner's Allocated Capital, with accrued interest thereon to the date of repayment, shall be repaid at the time of such Active Partner's final distribution with respect to the Fiscal Year which includes the date of death or effective date of withdrawal, retirement or conversion to Consulting Partner or Retired Partner.

(2)     Upon a termination of the Partnership without reformation pursuant to Article 1-D(3), Allocated Capital, with accrued interest thereon to the date of repayment, shall be returned in proportion to Allocated Capital balances prior to the distribution of assets of the Partnership to the partners.

(3)     The Committee may, in its discretion, limit the aggregate payments otherwise required under Article 15-E(1) to ten percent (10%) of total Allocated Capital at the end of the applicable Fiscal Year.   In any Fiscal Year in which the operation of this Article 15-E(3) results in a reduction of repayments of Allocated Capital, such reduction shall be borne pro rata by the persons eligible for such repayments in proportion to the Allocated Capital balances of all such persons.  Any shortfall under this Article 15-E(3) shall be paid as promptly as the financial condition of the Partnership permits, on at least a pro rata basis with any other payments made pursuant to Article 15-E(1), and such shortfall shall continue to accrue interest until paid.

### 16.     OFFSET; ASSIGNMENT.

**A.**     The Committee may offset any debts of a partner to the Partnership against any amounts payable under Articles 5 or 15-E(1) or (2).

**B.**     A Partner may not sell, give, assign, specifically bequeath, pledge or otherwise encumber, divest, dispose of or transfer all, any part of, or any interest in, whether voluntary or by operation of law ("Transfer"), a Partner's Allocated Capital or interest in the Partnership.   Any Transfer, attempted Transfer, or purported Transfer shall be null and void.

### 17.     COUNTERPARTS.   This Agreement may be executed in any number of counterparts, all of which collectively shall constitute the agreement between the parties.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

[Signatures Appear on Original]

30