UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND J. CAREY,

    Plaintiff,

v.

                                        Case No. 11-10818

                                        Hon. John Corbett O'Meara

FOLEY & LARDNER, LLP,

    Defendant.
_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court are (1) Defendant's motion for summary judgment; (2) Plaintiff's motion for partial summary judgment; (3) Defendant's motion for involuntary dismissal; and (4) Plaintiff's motion to strike the Declaration of Stanley Jaspan. The court did not hear oral argument.

**BACKGROUND FACTS**

Plaintiff Raymond J. Carey is a partner in the Detroit office of the law firm of Defendant Foley & Lardner, LLP. Plaintiff, who is a fifty-nine-year-old white male, contends that Defendant discriminated against him on the basis of his gender, race, and/or age with regard to his compensation. Plaintiff joined Foley in October 2000 as a "contract partner." The firm's management committee voted to admit him as an "active partner" effective February 1, 2003. Plaintiff remains an active partner of the firm to date.

The firm's management committee sets partner compensation after it receives recommendations from the compensation committee. Both the firm's management committee

and compensation committee are primarily comprised of partners who are white, male, and over the age of fifty. See Def.'s Ex. 24-1 (management and compensation committee members 2008-2012). In reaching its recommendations, the compensation committee reviews input solicited from each partner, the partner's department chair, the office managing partner, as well as financial information related to that partner's practice. See Declaration of S. Jaspan at ¶ 8. Partners are assigned "units," which reflect the extent each partner shares in the firm's earnings.

Foley contends that there is no "mathematical formula" used to determine partner compensation and that the firm considers the following "non-exclusive" factors in making its decision: revenue generated, quantity and quality of work performed, participation and success in business development activities, sharing credit relative to client responsibility and matter supervision, leverage (whether the partner is generating work for others), firm leadership, management, administrative responsibilities, mentoring responsibilities, geographic location, area of practice and credentialing activities, work performed for the firm, participation in firm investment activities, reputation of the individual partner, and partner trending. Id. at ¶ 9. Defendant states that it "generally follows a trending, or 'slow up, slow down' approach, awarding and revoking Units incrementally to avoid erratic peaks and valleys." Id. at ¶ 10. See also Pl.'s Ex. F (memos from 2007 to 2011 outlining factors for department chairs and office managing partners to consider in reports regarding partner compensation).

From 2007 to 2012, Plaintiff received annual compensation of $387,855 (45 units), $421,044 (52 units), $475,252 (68 units), $481,508 (68 units), and $393,540 (60 units), respectively. Plaintiff contends that Defendant determines partner compensation by a "subjective" and "arbitrary" process. Plaintiff asserts that he received a "substantially lower rate

of pay" than his female, minority, and younger colleagues for equal or less work. See Def.'s Ex. 24-12, 24-13, 24-14, 24-15 (partner production reports, including annual distributions per partner, for 2008-2012). Plaintiff's wage discrimination claims arise under the Equal Pay Act, Title VII, and the Age Discrimination in Employment Act.[1]

## LAW AND ANALYSIS

### I. Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### II. Equal Pay Act

In order to establish a prima facie case under the Equal Pay Act, a plaintiff "must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Corning Glass Works v. Brennan, 417 U.S. 188,

---

[1] As a partner, Plaintiff may or may not be covered as an "employee" under these anti-discrimination statutes. See Clackamas Gastroenterology Assocs. P.C. v. Wells, 538 U.S. 440 (2003). However, because the court finds that Plaintiff cannot succeed on the merits of his claims, the court need not address Plaintiff's argument that he is an "employee" of the firm.

195 (1974) (quoting 29 U.S.C. § 206(d)(1)); see also Beck-Wilson v. Principi, 441 F.3d 353, 359 (6th Cir. 2006). "'Equal work' does not require that the jobs be identical, but only that there exist 'substantial equality of skill, effort, responsibility and working conditions.'" Buntin v. Breathitt Cty. Bd. of Educ., 134 F.3d 796, 799 (6th Cir. 1998). In determining whether work is substantially equal, the "controlling factor under the Equal Pay Act is job content – the actual duties that the respective employees are called upon to perform." Santiago v. U.S., 107 Fed. Cl. 154, 161 (2012). See also Conti v. Universal Enterprises, Inc., 50 Fed. Appx. 690, 697 (6th Cir. 2002) ("[T]he label to be applied to the position is not determinative. The pertinent inquiry must focus on the actual requirements and performance of the jobs in question.").

Once the plaintiff establishes a prima facie case, the defendant bears the burden of proving that the wage differential is justified under one of the four affirmative defenses set forth under § 206(d)(1) of the Equal Pay Act: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." Id. The fourth, "catch-all" provision "does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason." E.E.O.C. v. J.C. Penney Co., Inc., 843 F.2d 249, 253 (6th Cir. 1988). But see Wernsing v. Department of Human Serv., 427 F.3d 466, 468 (7th Cir. 2005) ("The statute asks whether the employer has a reason other than sex – not whether it has a 'good' reason."). "The employer must prove that 'sex provides *no part* of the basis for the wage differential'" in order to prevail on summary judgment. Timmer v. Michigan Dep't of Commerce, 104 F.3d 833, 844 (6th Cir. 1997). Unlike in a Title VII case, an EPA plaintiff "is not required to prove pretext"; however, "she still must come forward with evidence demonstrating the existence of a triable issue of fact" with respect

to a defendant's affirmative defense. Id.

Plaintiff contends that he was paid at a lower "rate" than certain younger, female, and minority partners who performed equal or less work than he did. For the purpose of Plaintiff's Equal Pay Act claim, the court will focus on female comparators, such as Nicole Lamb-Hale, Judy O'Neill, and Anne Marie Uetz.[2] Lamb-Hale was a partner in Foley's Detroit office who specialized in bankruptcy and business reorganization law and was the Office Managing Partner from fiscal year 2006-2007 until she left the firm in 2009. O'Neill specializes in bankruptcy and business reorganization law. Uetz specializes in bankruptcy law and commercial litigation.

Defendant argues that none of the female attorneys to whom Plaintiff seeks to compare himself are appropriate because they do not specialize in the same area of law as he does. Differing legal specialties within a law firm may or may not have "substantially equal" job content. The determining factor is not the title, but the actual job duties performed. Here, Plaintiff has not established that each of the proposed comparators perform job duties that are substantially equal to his. The court is unable to assume that all large firm partners perform essentially the same core job duties. Plaintiff has not detailed the job duties of his comparators, but suggests that they are equivalent to his because they are all "active partners" in the firm, they all have law degrees, and they all provide legal services to clients and engage in client development. The category "legal services," however, encompasses a wide range of job duties and the court has no basis to conclude that Plaintiff and his proposed comparators have the same

---

[2] See also Pl.'s Ex. J for profiles of additional comparators: Miriam Claire Beezy (intellectual property and entertainment law); Pamela Johnston (white collar and securities); Shirley Morrigan (health care); Leila Nourani (business litigation); Denise Rios Rodriguez (health care); Anne E. Ross (transactional); and Tami Smason (business litigation).

job content.

For example, a cursory review of the profiles of Plaintiff and the proposed comparators suggests that their legal practices engage different skills, knowledge, expertise, and tasks.[3] See Pl.'s Exs. A & J. Carey's profile states that "[h]e has over 30 years experience wisely counseling employer representatives within all industries concerning the diversity of human resource and labor relations issues that affect the workplace. . . . Carey has successfully defended employers and their management representatives against myriad individual plaintiff, multi-plaintiff and class action claims involving virtually all types of federal and state statutory and common law employment causes of action. . . . Carey counsels employers concerning development and implementation of effective policies . . . pertaining to litigation avoidance, hiring, compensation, benefits. . . . He also advises employers with respect to labor/management relations issues, including effective union avoidance strategies. . . ." Pl.'s Ex. A.

Judy O'Neill's profile states that "O'Neill practices in bankruptcy, insolvency, reorganization, commercial transactions and corporate law and business transactions. . . . She has represented clients in all aspects of debt restructurings, debt enforcement, including real and personal property foreclosures. She counsels companies on strategies to prevent court proceedings and representing troubled public and private companies in bankruptcy and in out-of-court proceedings. Her cases include the representation of purchasers and sellers in acquisitions arising from receiverships, foreclosures and bankruptcy proceedings, and unsecured creditors

---

[3] Plaintiff has presented marketing materials from Foley's website on each attorney as evidence that they perform equal work. Although these profiles outline each attorney's accomplishments and general practice, they do not detail the type of tasks each attorney does on a daily, weekly, or monthly basis such that the court may perform a "factor by factor" comparison for each particular comparator. See Santiago, 107 Fed. Cl. at 158.

-6-

committees, and secured lenders in bankruptcy and out of court restructurings. . . . She assisted with drafting Michigan's Public Act 4, to address municipal insolvency and restructuring issues. . . . . O'Neill is a facilitator for the Eastern District of Michigan Bankruptcy Court." Pl.'s Ex. J.

Although both Plaintiff and O'Neill, in a general sense, counsel clients and represent them in court, their practices involve different duties, skills, and expertise. For example, Plaintiff does not help companies reorganize or restructure their debt; O'Neill does not counsel employers on human resource issues or assist in anti-union campaigns. Plaintiff has not made a showing that he and O'Neill perform substantially equal job duties. This is not to say that any comparator must necessarily be in Plaintiff's labor and employment law practice group, but that Plaintiff has the burden of demonstrating that he and his comparators perform substantially equal work. He has not satisfied that burden here, with respect to any female comparator.[4] See generally Reznick v. Associated Orthopedics & Sports Medicine, P.A., 104 Fed. Appx. 387, (5th Cir. 2004) (two orthopedic surgeons working in the same clinic not shown to have "substantially equal" jobs where one specialized in sports medicine and the other was a hand surgeon); Wheatley v. Wimico Cty., 390 F.3d 328, 332 (4th Cir. 2004) (supervisors of different county departments did not have substantially equal jobs, although "at a high level of abstraction these positions all require directors to do the same thing – supervise, coordinate, and organize. But, the EPA demands more than a comparison of job functions from a bird's eye view."); Soble v. University of Maryland, 778 F.2d 164, 167 (4th Cir. 1985) (plaintiff and comparators, although

---

[4] See Pl.'s Ex. A (Plaintiff's profile), J (attorney profiles); Declaration of Stanley Jaspan at ¶¶ 19-21; Supplemental Declaration of S. Jaspan at ¶ 7. Although Plaintiff has moved to strike portions of the Jaspan declarations, the court will deny the motion as untimely and without merit.

all assistant professors in the same department, did not perform substantially equal work; further "[a]ll departments other than Soble's are highly specialized and require distinct skills foreclosing any comparison Soble might make."); Weaver v. Ohio State Univ., 71 F. Supp.2d 789, 799-800 (S.D. Ohio 1998) (no substantial equality between positions of women's field hockey coach and men's ice hockey coach; noting "Courts which have addressed the merits of Equal Pay Act claims advanced by coaches of athletic teams have been reluctant to find an equality of work between coaches of different sports.").

Further, in some cases the proposed comparator did not earn more than Plaintiff on an annual basis; for example, Ann Marie Uetz, Shirley Morrigan, Leila Nourani, and Tami Smason. See Decl. of S. Jaspan at ¶ 21; Supp. Decl. of S. Jaspan at ¶ 7. Plaintiff argues that, based upon his own statistical analysis, he was compensated at a lower "rate" of pay per billable hour and non-billable hour, and his annual compensation as a percentage of collections/partner billing was substantially less than his female comparators. Putting aside the fact that Plaintiff is not a statistical expert, Plaintiff is attempting to impose a formula that does not reflect how Defendant determines compensation. Defendant is not required to take into account only billable hours or an attorney's book of business when compensating its partners. Rather, Defendant is permitted under the EPA to consider various other factors, including business development activities, sharing of credit relative to client responsibility and matter supervision, leverage (whether the partner is generating work for others), firm leadership, management and administrative responsibilities, mentoring, geographic location, area of practice and credentialing activities, work performed for the firm, reputation of the partner, and partner trending. See Decl. of S. Jaspan at ¶9. There is no evidence that these factors are shams or are used by the firm merely to

mask sex discrimination. See Pl.'s Ex. F (memos to department chairs and office managing partners regarding factors to be used in evaluating partners for compensation purposes).

For each comparator, Defendant explains why the female attorney was paid more (if applicable) than Plaintiff, based upon various gender-neutral factors. In this respect, Defendant has established the affirmative defense that its compensation decisions were based upon "any other factor other than sex." For example, Defendant states that Nicole Lamb-Hale was paid more than Plaintiff because of her role as the Office Managing Partner. Id. at ¶ 19. Defendant's CEO described Lamb-Hale as a "well-performing OMP" whose compensation is "too low for the role she has." Id. In 2008-2009, Lamb-Hale devoted nearly 800 hours to firm management.

Defendant states that O'Neill "routinely surpassed Carey in Principal Billing Partner ("PBP") and Supervising Partner ("SP") collections. . . . For example, as of the end of fiscal year 2011-2012, Ms. O'Neill's three-year average for PBP collections was over $2,000,000, whereas Carey's average for that period was only slightly more than $1,000,000. . . . She has served as Vice Chair of the Firm's Bankruptcy Practice Group, is viewed as one of the two 'best known and best credentialed bankruptcy lawyers in the firm' and as an 'effective mentor' of other attorneys in the Firm, and has made 'cross-selling visits to other offices' yielding good results, with a focus on building a national practice." Decl. of S. Jaspan at ¶ 20.

With respect to Uetz, she was paid less or equal compensation to Carey from 2008 to 2011. Id. at ¶ 21. Uetz was paid more for fiscal year 2011-2012; "[t]hat year, Ms. Uetz exceeded Carey in every financial category. Notably, Ms. Uetz's compensation is also based on the fact that she serves as Vice Chair of the Firm's Bankruptcy Practice Group, is the Detroit office Litigation Department Chair, and has been recognized by the Firm as being an outstanding

mentor to Associates and newer partners." Id. See also Supp. Decl. of S. Jaspan at ¶ 7 (reasons for higher pay for certain female partners include "desire to build a white collar criminal law practice," "superior financial performance," leadership roles, "outstanding mentor," "decision was made to trend her compensation down slowly," decisions not to penalize partners for health issues, and firm management responsibilities).

In contrast, Defendant states that Plaintiff's "method of practice has limited his compensation." Decl. of S. Jaspan at ¶ 12. "In particular, Carey practices as a 'silo,' rarely involving other Foley Partners or Associates in matters or with clients. This style of practice is also reflected in Carey's lack of any meaningful leverage, i.e., the ratio of non-Partner hours to Partner hours on given matters." Id. Over Plaintiff's years at Foley, he has consistently been perceived as practicing as a "lone wolf," "one-man shop," or "solo practitioner," not supervising or working with associate attorneys. Id. at ¶ 13. In 2008-2009, it was reported to the compensation committee that "[u]nfortunately, Ray is somewhat of a silo and does not leverage his work. As a result the compensation recommendation is somewhat lower than his numbers would suggest. He needs to be told that he would make more money 'if' he pushed some of the work down." Id. Defendant further notes that Plaintiff does not hold any leadership position with the firm. Id. at ¶¶13-14.

Plaintiff disagrees with Defendant's assessment of his performance as well as that of Lamb-Hale, O'Neill, and Uetz. See e.g., Pl.'s Affidavit at ¶¶ 81-83, 86-88. Plaintiff's evidence in this regard is largely based upon his opinion of others' qualifications, contributions to firm, and/or performance. Id. Although Plaintiff may disagree with Defendant's justifications for any perceived pay disparity or feel that Defendant's method of determining compensation is unfair,

Plaintiff has not set forth facts that raise an inference that any such differential was based upon gender or that Defendant's reasoning is pretextual. Indeed, a review of partner compensation for Defendant's Detroit office reveals that the highest-paid partners (as well as the decision-makers regarding compensation) are overwhelmingly white men. See Def.'s Ex. 24-12, 24-13, 24-14, 24-15.

For all of the above reasons, the court finds that Plaintiff has not set forth a prima facie case under the Equal Pay Act. In addition, Defendant has established that any pay disparities were the result of factors other than gender.

### III.  Title VII

In addition to his claim under the EPA, Plaintiff brings "reverse" sex and race discrimination claims under Title VII with respect to his pay.  "A reverse-discrimination claim carries a different and more difficult prima facie burden. A plaintiff in a reverse-discrimination claim has established a prima facie case upon showing that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority ... and upon a showing that the employer treated differently employees who were similarly situated but not members of the protected group." Briggs v. Potter, 463 F.3d 507, 517 (6th Cir. 2006) (reverse sex discrimination).  "Our circuit's heightened standard for reverse-discrimination cases presumes that such discrimination is comparatively rare, and that some indication of impermissible discrimination *in addition to* the plaintiff's own poor treatment is necessary to support an inference of impropriety." Treadwell v. American Airlines, Inc., 447 Fed. Appx. 676, 679 (6th Cir. 2011) (emphasis in original) (reverse race discrimination).

Plaintiff has failed to muster evidence that Defendant discriminates against whites and/or

men, and thus cannot establish a prima facie case of reverse discrimination under Title VII. Plaintiff points to a memo outlining Defendant's attempt to improve the retention of women attorneys, but this does not raise an inference of an intent to discriminate against men. See Pl.'s Ex. K (noting that the firm had "disproportionate attrition of women attorneys"). See also Def.'s Ex. 24-12, 24-13, 24-14, 24-15 (Detroit partner production reports showing four women out of seventeen in 2008, three women of seventeen in 2009, two women of sixteen in 2010, two women of fifteen in 2011, and a similar proportion of minority partners). Given the chronic and disproportionate lack of women partners at large law firms, it would certainly be unusual for Defendant to discriminate against men. See generally S. Elizabeth Foster, The Glass Ceiling in the Legal Profession: Why Do Law Firms Still Have So Few Female Partners? 42 U.C.L.A. L.R. 1631 (1995); Eli Wald, Glass Ceilings and Dead Ends: Professional Ideologies, Gender Stereotypes, and the Future of Gender Equality at Large Law Firms, 78 Fordham L. R. 2245, 2250-58 (2010). Plaintiff has not presented facts raising such an inference, with respect to gender or race.

## IV.   ADEA

Finally, Plaintiff contends that Defendant discriminated against him based upon his age. Again, Plaintiff has not presented evidence of intentional age discrimination with respect to his pay. Assuming Plaintiff was treated less favorably than younger attorneys, Plaintiff has not set forth facts raising an inference that Defendant's reasons for doing so were pretextual. See Geiger v. Tower Automotive, 579 F.3d 614, 620 (6th Cir. 2009) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 178 n. 4 (2009)) ("[T]he burden of persuasion remains on ADEA plaintiffs to demonstrate 'that age was the "but-for" cause of their employer's adverse action.'").

**ORDER**

For these reasons, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for involuntary dismissal is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to strike the declarations of Stanley Jaspan is DENIED.


                                               s/John Corbett O'Meara
                                               United States District Judge

Date:  September 4, 2013



I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, September 4, 2013, using the ECF system.

                                                 s/William Barkholz
                                                 Case Manager